## HUME *v.* UNITED STATES.

## UNITED STATES *v.* HUME.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 102, 103. Submitted November 13, 1889. — Decided December 16, 1889.

When a contract is so extortionate and unconscionable on its face as to raise a presumption of fraud or to require but slight additional evidence to justify such presumption, fraud may be set up as a defence in an action at law with the same effect with which it could be set up in equity as a ground for affirmative relief; and if articles delivered in performance of such an unconscionable contract have been accepted in ignorance, and under circumstances excusing their non-return, and they have some value, the.amount sued for will be reduced to that value in the judgment.

Persons dealing with public officers are bound to inquire about their authority to bind the government, and are held to a recognition of the fact that government agents are bound to fairness and good faith as between themselves and their principals.

The plaintiff contracted in writing to sell to the government a quantity of shucks at 60 cents a pound at a time when the market value of that article was $1\frac{3}{4}$ cents a pound. He delivered them and they were consumed in the government service. He then claimed to be paid at the contract price, which, being refused, he sued therefor in the Court of Claims: *Held,* that he could only recover the market value of the shucks.

THE court in its opinion stated the case as follows:

Claimant filed his petition against the United States in the Court of Claims, averring that on the 9th day of August, 1883, he entered into a contract in writing with the Acting Secretary of the Interior Department for the furnishing of certain articles, constituting items in his proposal numbered 2, 9, 19, 32, 42, 56, 71, 77, 78, 79, 89, 90, 91, 97, 102 and 103, to the Government Hospital for the Insane near Washington, at rates

specified therein ; that he had furnished merchandise amounting to the sum of $5695.89, according to the prices established by the terms of the contract, and had been paid only the sum of $1663.89, and that there was still due and owing to him the sum of $4032, which he was entitled to recover with interest from the first day of July, 1884 ; and that the accounting officers of the Interior Department had refused and neglected to pay such balance of $4032, because, as they alleged, the price charged for item 97 in claimant's proposal was excessive, " notwithstanding the charge therefor was based upon the amount stated in said proposal, and accepted by said defendant's officers and agents, and by them incorporated in said contract as aforesaid."

To this petition a special plea was filed February 12, 1886, on behalf of the United States, to the effect that claimant had agreed to furnish shucks to the government hospital at the rate of sixty cents per hundred weight, and entered into a written contract, to recover damages for the breach of which this suit was instituted, whereby he agreed to furnish (*inter alia*) shucks at the rate of sixty cents per pound ; that this was a clerical error, the real contract being that shucks were to be furnished by claimant to said hospital at sixty cents per hundred weight ; that notwithstanding this "claimant attempts to practise a fraud against the United States in attempting to establish an allowance of the claim as made by him, and by his effort to obtain a judgment in this court upon such written contract, as if such mistake and clerical error had not been made, and for the amount due for the shucks furnished, as expressed by mistake in said written contract."

To this special plea claimant replied, by his attorney, denying that he agreed to furnish shucks at the rate of sixty cents per hundred weight, and averring that he bid for shucks "at the rate of sixty cents per pound, in accordance with the printed schedule furnished him by the United States upon which to make out his bid ; that the said price was the price at which he intended to bid, and that there was no mistake on his part in making out the bid ; . . . that the said contract contained fifteen other items of goods, which were fur-

nished as ordered, and some items furnished in much larger quantities than the estimated quantity contained on the printed schedule; that upon some of the items the claimant lost money; upon others there was a very small profit; and that upon the whole contract, adjusted at contract rates, the claimant will not receive more than a fair and reasonable profit. Claimant denies emphatically any attempt to practise a fraud on the United States, and avers that the whole transaction was in absolute good faith in the ordinary course of business; that there was no inducement or promise made in regard to the matter, except the written proposal of the claimant and the written contract."

Evidence was adduced on behalf of the United States, tending to show that shucks at the time of the contract were worth from three-fifths of a cent to one cent and three-quarters per pound; that it was the custom of the government to buy shucks by the hundred weight; and that the mistake in question had occurred by reason of the word "pounds" in the printed form not having been struck out and "hundred weight" inserted; all of which evidence was objected to on behalf of the claimant.

The Court of Claims filed its findings of fact and conclusion of law on the 3d of May, 1886.

The first finding sets forth the advertisement of the Secretary of the Interior for proposals for furnishing supplies to the Government Hospital for the Insane for the fiscal year ending June 30, 1884, stating, among other things, "Proposals must be made in duplicate on the forms furnished by the Department." "Bids will be considered on each item separately. Schedules containing blank forms for bidding, items and approximate estimates of amounts will be furnished on application." A description of what the quality of many of the articles, not including shucks, must be, is given at length in the advertisement.

The second finding contains the bids of the claimant on forms furnished by the department, the schedule attached to his proposal enumerating some one hundred and seven articles, on all but twelve of which claimant made bids. This schedule,

under the head of estimated quantity, enumerates the articles by pound, dozen, gross, bushel, box, ton, barrel, bale, gallon, case, quart and sack, and the bids are carried out per pound, per dozen, per gallon, etc.

The third finding gives the contract, by the terms of which the claimant agrees to furnish the items in the proposal, numbered as in the petition, and the Acting Secretary of the Interior agrees to pay or cause to be paid on behalf of the United States the prices specified in the proposal and contract, "for all the articles delivered and accepted," the right being reserved to order a greater or less quantity of each.

The fourth and fifth findings and conclusion of law are as follows:

"IV. He (claimant) furnished under said contract all the articles included under items Nos. 2, 9, 19, 32, 42, 56, 71, 78, 79, 89, 90, 91, 102, 103, and has been paid therefor according to the contract. He also furnished in two or three lots, in the latter part of the year 1883, 6720 pounds shucks under item No. 97, with memorandum-bills accompanying the delivery thereof, with the price carried out, at 60 cents per pound, the whole aggregating $4032. For the shucks he has not been paid.

"V. At the time said contract was made shucks were of the market value of from $12 to $35 a ton, according to quality, and whether they were hackled or unhackled; and those furnished by the claimant were of the market value of $35 a ton, or $1\frac{3}{4}$ cents per pound, aggregating, for all that were delivered, $117.60.

"Conclusion of law. Upon the foregoing findings of fact the court decides, as a conclusion of law, that the claimant is entitled to recover $117.60 and no more."

The opinion of the court was delivered by Richardson, C. J., 21 Ct. Cl. 328, who, after stating the facts and pointing out that the claimant was the only bidder for shucks, says:

"At the time the contract was made shucks were worth from $12 to $35 a ton, or from 6 mills to $1\frac{3}{4}$ cents a pound, while the claimant was to receive nearly forty times as much as the highest value.

"That an agreement to pay $1200 a ton for shucks, actually worth not more than $35 a ton, is a grossly unconscionable bargain, defined in Bouvier's Law Dictionary to be 'a contract which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept on the other,' nobody can doubt. Such a contract, whether founded on fraud, accident, mistake, folly, or ignorance, is void at common law. It is not necessary to invoke the aid of a court of equity to reform it. Courts of law will always refuse to enforce such a bargain, as against the public policy of honesty, fair dealing, and good morals."

After citing Story's Equity Jurisprudence, § 188 ; *James* v. *Morgan*, 1 Levinz, 111; *Baxter* v. *Wales*, 12 Mass. 365; and *Leland* v. *Stone*, 10 Mass. 459, the opinion thus concludes:

"These citations are sufficient to show that in suits upon unconscionable agreements the courts of law will take the matter in their own control, and will, without the intervention of courts of equity, protect the parties against their enforcement.

"If it be so in suits on contracts between private parties who act by and for themselves, how much more is it so in suits on agreements by the United States, acting always through public officers, who are mere agents, required to act in good faith towards their principal according to the laws of the land, as everybody dealing with them is bound to know.

"There is no finding by the court of actual fraud by any of the persons engaged in making the contract now under consideration. The unconscionable price inserted for shucks was no doubt a mere accident, perhaps from an idea that it was the price per *hundred pounds* instead of per *pound*, as printed in the proposals and contract, and from neglect to change the printed words accordingly, which, if it had been done, would have fixed the price at $12 a ton, the very price which the findings show to have been the lowest value of shucks of any kind at that time. But, however it may have happened, we hold, as was held in the case of *Leland* v. *Stone*, from which we have quoted the words of the court, that a contract may be held unconscionable without proof of *actual fraud* at its inception if its *enforcement* would be unconscionable.

"It would be a fraud upon the United States to enforce such a contract as the one now in suit, and it never can be done through the Court of Claims."

Judgment was accordingly rendered in favor of the claimant for $117.60, and both parties appealed.

*Mr. Robert Christy* and *Mr. John C. Fay* for Hume.

*Mr. Assistant Attorney General Maury* for the United States.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court:

In his celebrated judgment in *Earl of Chesterfield* v. *Janssen*, 2 Ves. Sen. 125, 155, Lord Hardwicke arranged all the forms of fraud, recognized by equity, in four classes, the first two of which he gives in these words:

"1. Then fraud, which is *dolus malus*, may be actual, arising from facts and circumstances of imposition; which is the plainest case. 2. It may be apparent from the intrinsic nature and subject of the bargain itself; such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other; which are unequitable and unconscientious bargains; and of such even the common law has taken notice; for which, if it would not look a little ludicrous, might be cited *James* v. *Morgan*, 1 Lev. 111."

The case referred to by the Lord Chancellor was ruled by Sir Robert Hyde, then at the head of the King's Bench, and is reported in 1 Levinz, 111, in these words:

"Assumpsit to pay for a Horse a Barley-Corn a Nail, doubling it every Nail; and avers that there were thirty-two Nails in the Shoes of the Horse, which, being doubled every Nail, came to five hundred Quarters of Barley. And on *Non-Assumpsit* pleaded, the Cause being tried before *Hyde* at *Hereford*, he directed the Jury to give the Value of the Horse in Damages, being £8, and so they did. And it was afterwards moved

in Arrest of Judgment for a small Fault in the Declaration, which was overruled, and Judgment given for the Plaintiff."

*James* v. *Morgan* is cited by Lord Chief Justice Hale, 1 Ventris, 267, *Lord Eure and Turton*, note, to the point that "upon certain contracts the jury may give less damages than the debt amounts to," and also in Bacon's Abridgment, Damages, D. 1, together with *Thornborough* v. *Whiteacre*, 6 Mod. 305; *S. C.* 2 Ld. Raym. 1164, *sub nom. Thornborow* v. *Whitacre;* to the same point, stated thus: "Though in contracts the very sum specified and agreed on is usually given, yet if there are circumstances of hardship, fraud or deceit, though not sufficient to invalidate the contract, the jury may consider of them and proportionate and mitigate the damages accordingly."

In *Thornborough* v. *Whiteacre*, the plaintiff declared that the defendant, in consideration of 2s. 6d. paid down, and £4 17s. 6d. to be paid on the performance of the agreement, promised to give the plaintiff two grains of rye corn on a certain Monday, and to double it successively on every Monday for a year; and the defendant demurred to the declaration. Upon calculation, it was found that, supposing the contract to have been performed, the whole quantity of rye to be delivered would be 524,288,000 quarters. The court recognized the case of *James* v. *Morgan* as good law, and said that though the contract was a foolish one, the defendant ought to pay something for his folly. "The counsel for the defendant, perceiving the opinion of the court to be against his client, offered the plaintiff his half crown and his cost, which was accepted of, and so no judgment was given in the case."

In *Leland* v. *Stone*, 10 Mass. 459, *James* v. *Morgan* and *Thornborough* v. *Whiteacre* are referred to with approbation, and the principle of mitigating the damages applied, as also in *Cutler* v. *How*, 8 Mass. 257; *Cutler* v. *Johnson*, 8 Mass. 266; and *Baxter* v. *Wales*, 12 Mass. 365. And see *Greer* v. *Tweed*, 13 Abb. Pr. N. S. 427, and *Russell* v. *Roberts*, 3 E. D. Smith, 318.

Mr. Justice Swayne remarks, in *Scott* v. *United States*, 12 Wall. 443, 445: "Where parties intend to contract by parol, and there is a misunderstanding as to the terms, neither is

bound, because their minds have not met. Where there is a written contract and a like misunderstanding is developed, a court of equity will refuse to execute it. If a contract be unreasonable and unconscionable, but not void for fraud, a court of law will give to the party who sues for its breach damages, not according to its letter but only such as he is equitably entitled to. *James* v. *Morgan*, 1 Lev. 111; *Thornborow* v. *Whitacre*, 2 Ld. Raym. 1164; *Baxter* v. *Wales*, 12 Mass. 365."

But *James* v. *Morgan* and *Thornborough* v. *Whiteacre* were plainly cases in which one party took advantage of the other's ignorance of arithmetic to impose upon him, and the fraud was apparent upon the face of the contracts. In the latter case the defendant, by demurring, admitted that there was no fraud, and consequently the only question was on the validity of the contract in the absence of fraud, and it was sustained, but the plaintiff was allowed to take nominal damages only. And as to many of the cases it may be objected that they are at variance with the rule that a party must recover according to his contract if he sue upon it, or not at all, although, if the express contract were void, the defendant might nevertheless be held in general assumpsit, upon the implied contract to pay for property received from the plaintiff and retained.

The true principle deducible from the authorities, and most consistent with the reason of the thing, seems to be this: In the instance of a special contract which has been wholly executed and the time of payment passed, if the plaintiff proceeds in general assumpsit, the express contract is only evidence of the value of the consideration, which is open to attack by the defendant in reduction of damages. But, where the action is in special assumpsit, the express promise of the defendant fixes the measure of damages to which the plaintiff is entitled. And while the general rule is that the performance of every contract may be resisted on the ground of fraud, at law as well as in equity, yet upon a contract of sale, the defendant having accepted performance, cannot interpose this defence to defeat the contract, unless he returns the article or proves it to have been entirely worthless, though he may ordinarily recoup the damages which he can show he has sustained through

the fraud. And there may be contracts so extortionate and un-
conscionable on their face as to raise the presumption of fraud
in their inception, or at least to require but slight additional
evidence to justify such presumption. In such cases the nat-
ural and irresistible inference of fraud is as efficacious to
maintain the defence at law as to sustain an application for
affirmative relief in equity. When this is so, if performance
has been accepted in ignorance and under circumstances ex-
cusing the non-return of articles furnished, and these have
some value, the amount sued for may be reduced to that value.

In the case at bar the shucks had been appropriated by the
government before the discovery of the error in the schedule
and the position of the claimant in regard to it, and if the de-
fendant successfully impeached the contract on the ground of
fraud, the judgment for the actual market value of the shucks
was correct, and sustainable under the pleadings.

In order to guard the public against losses and injuries aris-
ing from the fraud or mistake or rashness or indiscretion of
their agents, the rule requires of all persons dealing with pub-
lic officers, the duty of inquiry as to their power and authority
to bind the government; and persons so dealing must necessa-
rily be held to a recognition of the fact that government
agents are bound to fairness and good faith as between them-
selves and their principal. *Whiteside* v. *United States*, 93
U. S. 247, 257; *United States* v. *Barlow, ante*, 271.

If the claimant intended to induce the agents of the govern-
ment to contract to pay for these shucks thirty-five times their
highest market value, and the agents of the government know-
ingly entered into such a contract, it will not be denied' that
such conduct would be fraudulent and the agreement vitiated
accordingly. If the claimant knew that a clerical error had
been committed, of which the agents of the government were
ignorant, and deliberately intended to take advantage of the
error to obtain the execution of a contract for the payment of
so grossly unconscionable a price, or if the facts were such
that he must be held to have known that their action, if under-
standingly taken, would be in palpable dereliction of their
duty to their principal, and, notwithstanding, sought to profit

by it, the character of the fraud, so far as the claimant is concerned, is not changed by the fact that such action was the result of the negligence or mistake of the government's agents, untainted by moral turpitude on their part.

The claimant by his replication insists that the price of sixty cents per pound for shucks "was the price at which he intended to bid, and that there was no mistake on his part in making out the bid." This is an admission, when taken with the findings of fact, that he designed to commit the agents of the government to a contract " such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other," and is fatal to his recovery according to the letter of the contract. Nor is its effect in that regard weakened in any degree by the suggestion that, under bids on each item separately, the claimant made but little profit, or none at all, on some of the articles.

The Court of Claims did not err in the admission of the evidence upon which the fifth finding of fact is based, nor in its refusal to permit the claimant to recover more than the market value of the shucks, its allowance of which we will not disturb.

The judgment is _____ *Affirmed.*