Booth, Judge,
delivered the opinion of the court:
Plaintiff, a Delaware corporation, expert in the manufacture of cameras and photographic supplies, asserts in this suit a balance due under the terms of a written contract with the defendant. Plaintiff’s argument is addressed primarily to the wording of the contract contending that the clause in dispute is one factor, mutually agreed upon, as the consideration for the performance of the contract, and as such is binding upon the parties. The facts in the case, about which there is no controversy, disclose a situation which obviously renders the claim inequitable and we think illegal. In December, 1917, the Government purchased from the inventor, one Lieut. G. Deliam, drawings and a partially finished model of an airplane camera. The peculiar importance of the device at the time is found in the war-time necessity of making airplane observations and surveys. Soon after acquiring the right to manufacture the defendant contracted with the plaintiff, on a cost plus 15 per cent basis, to complete a model of the DePam camera. This the plaintiff did by not only following the plans of the DePam camera but by supplementing the same by several suggested *50 improvements and important changes. For this work the plaintiff was paid, the amount being $30,000. The model produced in accord with the foregoing contract was not in all respects satisfactory. Various tests disclosed its imperfections, and following experiments and numerous suggestions the defendant proposed an agreement for the manufacture of what is designated by the parties, “Two hundred American Model DeBam cameras,” it being understood that the camera itself was in a more or less experimental shape and would require future development and changes in design. On August 20, 1918, the plaintiff responded to the defendant’s proposal, and in its response set out in detail the process of manufacture, and quoted a flat consideration therefor of $352,600, or $1,763 per unit. The defendant did not promptly accede to this offer. On the contrary, it invited the plaintiff to disclose the fro-fit which would accrue to the plaintiff if accepted on the basis proposed. The plaintiff, answering this request, in its letter of August 22, 1918, set forth in Finding VI, made the following statement: “ Our maximum profit will be approximately 10% per cent” the letter itself disclosing that the anticipated profit was computed on the basis of the plaintiff furnishing all the materials and procuring at its own expense all the special tools, dies, jigs, and patterns. Subsequently, on September 9, 1918, the contract now in suit was executed by the parties. Article V of this contract reads as follows:
“Article V. — Price
“ 1. The price the Government will pay the contractor for the articles delivered to and accepted by the Government shall be the sum of the following items:
“(a) The actual cost of such articles;
“(b) A fixed profit of one hundred and seventy-three dollars ($173) on each article;
“(c) A bonus for savings effected in the cost of the articles equal to twenty-five per cent of the difference between the actual cost of the articles accepted and their total estimated cost to wit: $1,590.00 each, but in making this computation, *51 said total actual cost shall be increased by decreases therein due to changes in specifications and decreases, or to increases in the rates of wages under any act, determination, decision, or award of any Federal or State authority.
“(d) The Government furthermore agrees to reimburse the contractor, at the actual cost thereof, for the special tools, jigs, and dies, together with all engineering and installation expenses connected therewith, which are necessary for the proper fulfillment of this contract. Title to such tools, jigs, and dies shall vest in the Government when reimbursement for the same is made.”
The plaintiff proceeded with commendable zeal toward the manufacture of the cameras. As a matter of fact, up to the signing of the armistice it employed overtime and holiday labor and exerted every effort to perfect the camera and complete deliveries. On November 12, 1918, the defendant notified the plaintiff to at once discontinue overtime and holiday labor, and on December 5, 1918, directed the plaintiff to limit its manufacture of cameras under the contract to 50 in number. Later on, after quite an extended correspondence, the defendant finally rescinded its order of December 5, 1918, and on December 19, 1918, reinstated the contract under which the plaintiff, on January 13,1920, completed the delivery of the 200 cameras. For these 200 cameras the plaintiff has been paid cost plus a fixed profit of $173 on each camera delivered.
This suit is for the recovery of $46,835.12, alleged to be due and owing under paragraph (c) of Article Y of the contract, the bonus-for-savings provision. A counterclaim of the defendant for $12,044.99 is admitted to be correct, due to an error in computation of miscellaneous overhead charges. So that in the event of a judgment for the plaintiff the correct amount would be $34,790.13, and if the defendant prevails, the United States is entitled to a judgment for $12,044.99. The actual cost- incurred by the plaintiff in manufacturing the cameras was $130,659.50. The difference between the actual cost and the stipulated estimated cost of $1,590 each totals $187,340.50. In other words, the plaintiff, under Article V of the contract, has received in addition to cost of material and special tools for *52 the actual labor expended a fixed profit of $84,600, and is now contending for an additional allowance of $46,835.12 under the bonus-for-savings clause, a sum of $12,235.12 in excess of the consideration paid for actual work and labor, resulting if allowed in a profit to the plaintiff under an expenditure which includes direct and indirect charges as well as all overtime, holiday labor, and materials of $130,-659.50, of $81,435.12. As a matter of conceded fact, each camera, instead of costing anywhere near the estimated cost, actually cost the plaintiff $634.80 each, $855.20 each less than the estimated cost, or much less than one-half the sum inserted in the contract as a standard of measuring the difference in estimated and actual cost to ascertain savings. The plaintiff, in its letter of August 22, 1918, had asserted an approximate profit of 10% per cent. If entitled to judgment, the gross error in its estimate increases its profits to 64 per cent. That either party to the contract contemplated such a result is positively negatived by the findings, and if the contrary is to obtain, assuredly the plaintiff accomplished a bargain glaringly disproportionate to what it actually earned.
The inducement for the insertion of the figures by the defendant in the bonus-for-savings stipulation is apparent from a computation of the cost figures submitted by the plaintiff in response to defendant’s proposal for bids. The plaintiff offered to manufacture the cameras for $1,763 per unit; the defendant solicited knowledge as to profits in event of acceptance of the bid. What follows ? A contract is entered into fixing an estimated cost of $1,590 for each unit, a fixed profit of $173 on each unit and the sum of the two equals exactly $1,763, the amount of plaintiff’s bid, and in addition to this, the plaintiff is favored with a provision imposing the cost of dies, jigs, and tools upon the defendant. Therefore, it is an inescapable conclusion that the defendant relied upon the accuracy of the plaintiff’s estimate. Upon no other hypothesis may the contract be explained. That the defendant was misled in this respect needs but assertion. The unconscionable gap between the actual and estimated cost was clearly the result of plaintiff’s representations, and *53 it may not escape the charge, because, for years it had been engaged in camera making; it knew the needs of photography, and was expert in its line of business. The proposal emanated from it and depended for acceptance upon parties not so fortunately situated. Having then induced the defendant, through its own egregious error, to erroneously bind itself to pay for articles to be supplied a sum largely in excess of their possible worth, are the courts bound to give effect to the letter of the agreement and disregard the accumulation of exorbitant and unreasonable profits? We think not.
It was an adopted practice of officers of the Government during the stress of war-time needs to insert in some cost-plus contracts a bonus-for-savings clause. We have had before us litigation respecting clauses of this nature. Manifestly the purpose contemplated by agreeing to pay a bonus for saving was to put a premium upon economy in production and thus derive for the Government a real and substantial monetary benefit. In other words, the consideration for the undertaking was the benefit accruing to the Government by a reduction in the cost of materials below the contract allowance. The contractor’s profit was assured and the Government gained in cost of materials. The case of J. J. Preis & Co. v. United States, 58 C. Cls. 81, was the first of this character. The Preis case failed for want of proof. Sup - plementary issues were discussed but not decided, the opinion concluding with this observation:
“ The test in such cases is whether or not there was any benefit to be derived by the United States from the execution of the supplemental or modified contract. In the case at bar no such benefit is provided for in the supplemental contract.”
The Preis contract involved the making of a large number of overcoats from material furnished by the Government. A specified quantity was expressly stipulated for each garment to be made, a fixed price to be paid therefor. The manufacturer, if he used in excess of this amount for each overcoat, did so at his own expense. The supplemental agreement provided a bonus for saving a portion of the quantity supplied; this is, for additional work and special care the manufacturer *54 was to receive a bonus of 20 per cent of the savings. The case, as before observed, failed for lack of proof disclosing the amount saved.
On April 13, 1925, we decided the case of Cohen, Endel Co. v. United States, 60 C. Cls. 513. This contract provided for the manufacture of overcoats, coats, and cotton breeches from a specified allowance of materials furnished by the Government and a fixed price per garment. Subsequently a supplementary contract was executed, wherein it is recited that experience has furnished the Government with knowledge of undue waste of materials in cutting garments required under the contract, and as an inducement for additional work and special care the contractor will be paid “ 20 per cent of the net cost price of such Government-owned materials, to the extent of the savings in uncut yardage on comparing the quantities actually used in cutting with the allowances for the purpose listed in the accompanying schedules.” The proof in the case disclosed that the plaintiff, in order to earn the bonus provided for in the supplementary contract, acquired a new plant, more space, additional appliances and employees, and incurred increased expenses in the handling and measuring of the cloth as well as in -wages paid to employees, and in virtue of this increased outlay succeeded in saving cloth worth to the Government 80 per cent more than was paid the plaintiff.
On this record the court was of the opinion that the supplementary contract was not without consideration and gave judgment accordingly. In its opinion the court reasserted the test announced in the Preis case (supra) and, among other things, said: “ Each case must be decided upon the facts proved and the circumstances surrounding it.” Finally, on January 11, 1926, we decided the case of F. Jacobson & Sons v. United States, 61 C. Cls. 420. This contract was in all essential particulars similar to the preceding ones. In the Jacobson case, as in the Cohen, Endel case, the proof established a most substantial outlay upon the part of the plaintiff to effect a saving in cloth; additional space was rented at an increased cost of $1,500 to the plaintiff, additional facilities were acquired, a reclamation department es *55 tablished, and additional employees employed, as a result of which the plaintiff accomplished a reduction in yardage for each shirt manufactured from that allowed in the contract, and the Government again profited to the extent of 80 per cent of the savings effected.
These cases, confidently relied upon by the plaintiff, vary in every essential particular from the case at bar. There is an utter absence in the stipulated findings of a single fact indicating the expenditure of additional sums on the part of the plaintiff to effect a saving in materials used. Nothing appears of record to warrant a conclusion that the plaintiff exerted extraordinary care in the use of materials, employed additional labor, or in anywise did more than the precise terms of the contract exacted of it. It is neither an unjust nor an unfair deduction from the record to state that, eliminating the bonus-for-savings clause from the contract entirely, the cameras would have cost in materials exactly what they did cost. To say that with the clause in the contract the contractor saved the Government $181,340.50 in materials, or considerably more than one-half of the estimated cost, is to attach to the probative effect of this record a significance wholly unwarranted. No attempt was made to establish consideration for the savings clause, save an argument that it was an inseparable ingredient of the total price to be paid and the case is indispensably brought to the single issue of the wide margin between actual and estimated cost, and an insistence for the enforcement of the letter of the contract.
Instead of deriving benefit from the bonus-for-savings clause, the Government is penalized to the extent of paying a sum in excess of the fixed profit in the contract, and the plaintiff is to be awarded more than five times his anticipated profits without the exertion of doing more than it was under express contractual obligations to do. Surely it may not be said that the fixing of an estimated cost in the contract licensed extravagance in the use of materials. The plaintiff possessed no lawful authority to use materials in excess of the quantity necessary to make the cameras, and there is nothing in the record which even indicates an actual *56 saving in cost to the Government, except where by the Government’s own act, it positively forbade the continuance by the plaintiff of overtime and holiday pay for labor. It is apparently inconceivable that under any of the facts narrated in this case there existed the faintest possibility of the cameras costing the estimated cost fixed in the contract. There is no contention advanced to that effect and absolutely no proof to sustain one if advanced.
In this connection it is pertinent to emphasize the unique provisions of the bonus-for-savings clause. In the cases in this court the bonus-for-savings provisions have rested for ascertainment upon fixed allowance of materials; i. e., precise yardage for each garment; and the saving effected is the comparatively small percentage between the yardage actually used and the allowance. Estimates are eliminated and the rights of the parties ascertainable upon a certain and fixed basis. The contractors obtaining judgments might have in the usual and customary method of tailoring garments consumed the entire yardage allowed and no more; but by extraordinary effort and additional expense did not pursue the customary course. Here the plaintiff is allowed no fixed amount of materials. The cost of the cameras was not limited to $1,590; no specific quantity in amount of materials was set aside for the contract, and with the exception of supervisory clauses and purchases in excess of $25,000 the plaintiff might, if necessity impelled, have exceeded the estimated cost in making the cameras. True, the contract contained an inducement to practice economy. This was a mere option, in no way mandatory, so that in its final analysis the plaintiff procures a contract obligating the Government to pay a fixed consideration by way of fixedl profits and a contingent liability to pay more if savings are effected upon a purely hypothetical basis. Such an agreement is closely akin to a unilateral contract and accords to the plaintiff all the beneficial interests of the undertaking and imposes upon the Government an express obligation to pay under certain circumstances far more for an article of necessity than the article can possibly be worth. It is axiomatic, an early rule of law, and consistently adhered to, that a *57 Government officer is without lawful authority to give away the rights of the Government. A clause in a Government contract without consideration is nonenforceable. The pub-liq nature of the undertaking works no distinction in the application of the rule. In the absence of express authority so to do, a Government officer may not pay gratuities for the performance of contractual duties which, under the very terms of the contract, the contractor is obligated to perform.
The plaintiff vigorously contends that the bonus-for-savings clause of the contract being “ a part and parcel of the original and only contract ” and imposing upon the plaintiff no additional obligation or responsibility as a consideration for the additional compensation, is but one factor for the ascertainment of the total consideration to be paid — an argument doubtless predicated upon the compensation clause, Article V of the contract. This clause reads in part as follows:
“ The price the Government will pay * * * shall be the sum of the following items.” Then follows “ (a) the actual cost of such articles; (b) a fixed profit of one hundred and seventy-three dollars ($173) on each article,” concluding with paragraph (c), the bonus-for-savings clause. This in effect is the equivalent of saying that the consideration expressed in a contract for its performance may not be challenged in part, notwithstanding it is grossly exorbitant and gratuitous in its nature. The fact that parties to an agreement, standing upon an equal footing, with equal opportunities to know, and knowing the consequences of the undertaking, will, in the absence of fraud, be held to the terms of the contract, does not preclude an assertion that the agreement was founded upon a lack of or an illegal consideration. One may, of course, within certain limitations, agree to pay more than an article is worth, and if the article is delivered in accord with the contract, the contract will be enforced; but that is not the case here. The plaintiff fixes the consideration at which it is willing to undertake the production of the article the defendant wants, viz: Cost plus a profit of $173, and this amount the defendant pays without protest or complaint. The cause of action here is upon an inde *58 pendent stipulation alleging a right to recover more than the stipulated profit, not in output but in savings. If, then, from the record the court is convinced that the cost of producing the article, as shown from the plaintiff’s books of account, is clearly normal, that under no circumstances would the plaintiff have been justified in spending more or less, then an agreement to pay for savings when no savings accrued is manifestly without consideration, and unless we may have recourse to the standard of measuring savings we may not award the plaintiff judgment. In our view of the case a stipulation to pay cost plus a profit and a percentage of savings in production are clearly severable and depend for enforcement upon an entirely different character of proof.
The plaintiff’s cause of action fails for another reason. It is obviously futile to contend that the sum now sued for would not result in the award of profits grossly exorbitant and unreasonable. Without challenging the good faith of the plaintiff we may with propriety advert to the fact that its own books of account convict it of gross error in making its estimate of cost, an error so palpably wrong that to take advantage of it is imposing a penalty upon the defendant who clearly relied upon its accuracy. As a result of plaintiff’s gross mistake the defendant, instead of procuring cameras at a reasonable price, is asked to pay nearly six times the estimated profits and receive in return nothing but the cameras, for there is no evidence that the plaintiff purchased, or had occasion to purchase, or turned back to the Government, $187,340.50 worth of material. A contract which results in profits of 64 per cent and brings into the plaintiff’s treasury a sum in excess of the fixed profits awarded is assuredly closed to a contention that the profits are not gross, exorbitant, and unreasonable. In Hume v. United States, 132 U. S. 406, the Supreme Court had before it a Government contract not essentially different in its important aspects from the contract in suit, and the court declined to enforce it. Chief Justice Richardson, in delivering the opinion of this court in the Hume case, after reviewing the English and American authorities on the subject, said:
*59 “ The court in its opinion cited the case of James v. Morgan and other cases, and said there is not in either of these cases any evidence of actual fraud or deception on the part of the plaintiff at the time of making the bargain. The fraud, if it is necessary to suppose any in this case, consisted in afterwards taking advantage of the defendant’s ignorance or mistake, and of attempting to enforce the performance of a contract, such, as Lord Hardwicke expresses it, ‘ as no man in his senses would make or as no honest man would come into.’ These citations are sufficient to show that in suits upon unconscionable agreements the courts of law will, take the matter in their own control and will, without the intervention of courts of equity, protect the parties against their enforcement. If it be so in suits on contracts between private parties who act by and for themselves, how much more is it so in suits on agreements by the United States, acting always through public officers, who are mere agents, required to act in good faith toward their principal according to the laws of the land, as everybody dealing with them are bound to know.”
The case before us reflects the importance of the rule. The defendant, wholly inexperienced in the cost of producing a new and improved photographic device, seeks out one skilled in this particular art, relying wholly upon the ability of the contractor to state within reasonable proximity the cost of its manufacture. The basis of the plaintiff’s estimate is not even asked. Whatever may have been the cause of the result, it is true that what followed may not be said to have been within the contemplation of the parties to the contract, and if it were otherwise there is no doubt as to the effect. The defendant would not have agreed to pay the sum now claimed had knowledge of the situation obtained. The good faith of this transaction resolves itself into a simple formula; i. e., the defendant was misled by the gross error of the plaintiff to subscribe to a contract which results clearly demonstrate as unreasonable and unconscionable. Defendant did what it would not have done except for this gross error. Shall the defendant then respond to the plaintiff for doing what the plaintiff’s error *60 led it into doing, and which otherwise it would not have done?
Justice Swayne observed in Scott v. United States, 12 Wall. 443, 445:
“ If a contract be unreasonable and unconscionable, but not void for fraud, a court of law will give to the party who sues for its breach damages not according to its letter, but only such as he is equitably entitled to.”
See also Beard v. United States, 3 C. Cls. 122; Bassick v. Aetna Explosive Co., 246 Fed. 974.
The petition should be dismissed. Judgment for defendant in its counterclaim in the sum of $12,044.99.
Moss, Judge, and Campbell, Chief Justice, concur.
Graham, Judge, and Hat, Judge, dissent.