725 P.2d 196

James R. HERSHEY and Edith L. Hershey, Plaintiffs-Respondents,

v.

Carey E. SIMPSON and Sheryl L. Simpson, Defendants-Appellants.

No. 16091.

Court of Appeals of Idaho.

Sept. 3, 1986.

492

Robert E. Kinney, of Orofino, for defendants-appellants.

Jeanette I. Thiel, Lewiston, for plaintiffs-respondents.

BURNETT, Judge.

The general issue in this appeal is whether a litigation settlement agreement should be enforced even though it may produce a harsh result in light of subsequent events. This issue embraces two specific questions: (1) Is the settlement agreement unconscionable? (2) Has the party seeking to enforce the agreement committed an antecedent breach? The district court refused relief on either ground and ordered the agreement to be specifically performed. For reasons explained below we vacate the district court's order.

The facts essential to our opinion are undisputed. Carey and Sheryl Simpson (the "buyers") purchased two parcels of land from James and Edith Hershey (the "sellers") on installment contracts. The parcels consisted of a homesite and surrounding farm acreage. The total price was $170,000. After paying approximately $100,000 on the contracts, the buyers defaulted. The sellers sued for the unpaid balance on each contract and requested a judicial sale of the property. The buyers counterclaimed, alleging misrepresentation and seeking damages. The case was settled before trial.

In the settlement agreement, the buyers dropped their counterclaim. They acknowledged owing sellers approximately $100,924.34 in unpaid principal, accrued interest, costs and attorney fees. In return for these concessions, the sellers gave the buyers more than a year—from May 26, 1983, to July 1, 1984—to recover their "equity" in the property by reselling to a new purchaser. The settlement agreement required the sellers to cooperate in such resale upon certain conditions. These conditions are set forth in the following excerpt (in which we have denominated the parties as the "original" buyers and sellers):

[The original sellers] will accept any offer over $150,000.00 if said sale is a cash sale out of the Judgement [sic] amount of $100,924.34 plus twelve percent interest on the Judgement [sic] amount from May 26, 1983, plus realtor costs and attorney fees necessary to effect said sale of both properties.

. . . .

[If] an acceptable [new] Buyer is found the proceeds from said sale will be applied in the following order:
1. Realtor costs and fees
2. Attorney fees and costs
3. Judgement [sic] amount to the [original sellers]
4. Interest on Judgement [sic] to the [original sellers]
5. Excess to the [original buyers].

. . . .

If by July 1, 1984, no acceptable [new] Buyer is found, the [original buyers] will quitclaim the property to the [original sellers] free and clear of all [the original buyers'] interest in the property.

The district court approved this settlement agreement and incorporated it into a judgment.

The deadline date passed without a resale. When the buyers failed to quitclaim their interest in the property, the sellers went back to court. They asked that the buyers be compelled specifically to perform the obligation to quitclaim their interest, as required by the agreement and judgment. The district judge ordered the buyers to show cause why they should not be held in contempt. Numerous hearings ensued, during which the judge and counsel engaged in colloquies regarding the agreement and the continuing possibility of reselling the property. Finally, on May 23, 1985, no resale having been consummated, the court issued an amended judgment directing the buyers to quitclaim their interest. This appeal followed.

I

■ We first consider the buyers' contention that the settlement agreement is unconscionable. A distinguished author has suggested that unconscionability has procedural and substantive components. *See* D. DOBBS, REMEDIES: DAMAGES, EQUITY, RESTITUTION § 10.7 (1973). Procedural unconscionability relates to the bargaining process leading to an agree-

ment. It is characterized by great disparity in the bargaining positions of the parties, by extreme need of one party to reach some agreement (however unfavorable), or by threats short of duress. These circumstances taint the bargaining process, producing a result that does not reflect free market forces. *Id.*

Procedural unconscionability is akin to, but somewhat less rigorous than, the familiar grounds for invalidating contracts—such as incapacity, fraud, duress, deceit, coercion, overreaching or mutual mistake. At least one court has held that if there are no grounds to invalidate a settlement agreement, procedural unconscionability will not warrant setting aside the agreement after it has been incorporated into a judgment. *See Hahn v. Hahn*, 465 So. 2d 1352 (Fla.App.1985). But we need not decide in this case whether to draw a sharp distinction between those settlements which are reduced to judgment and those which are not. In our view, the facts here fail to demonstrate a bargaining process tainted either by procedural unconscionability or by any of the general grounds for invalidating contracts.

■ The parties here possessed the contracting capacity and relatively equal bargaining power. Both sides were represented by counsel. No threats were made. The parties entered the settlement agreement voluntarily and the district court approved it. The buyers have not shown any fraud, duress, deceit, coercion, overreaching or mutual mistake while the agreement was negotiated. The buyers have argued that they felt an extreme need to reach an agreement because they believed the pending lawsuit would be decided against them. However, we do not regard this as the kind of circumstance contemplated by the doctrine of unconscionability. We conclude that nothing in the bargaining process justifies relief from the agreement, or from the judgment incorporating it.

■ The next question is whether the agreement is substantively unconscionable. This inquiry focuses on the agreement itself. An agreement may be unconscionable if it contains a bargain that "no man in his senses and not under delusion would make on the one hand, and [that] no honest and fair man would accept on the other." *Matter of Estate of Frederick*, 599 P.2d 550, 556 (Wyo.1979) (quoting *Hume v. United States*, 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889)).

Substantive unconscionability represents a narrow exception to the general principle that full force and effect must be given to a valid contract even though its provisions appear unwise or its enforcement may seem harsh. *Goodman v. Newzona Investment Co.*, 421 P.2d 318 (Ariz.1966). Only in special circumstances may a court of equity set aside contracts fairly and freely negotiated. *Mahurin v. Schneck*, 390 P.2d 576 (Ariz.1964). The question of special circumstances has been summarized as "whether *at the time of making of the contract*, and in light of the general commercial background and commercial needs of a particular case, clauses are so *one-sided* as to *oppress* or *unfairly surprise* one of the parties." *Barnes v. Helfenbein*, 548 P.2d 1014 (Okla.1976) (emphasis added). The elements of one-sidedness, oppression and unfair surprise are commonly cited in analyses of unconscionability. *See Graham v. Scissor-Tail, Inc.*, 171 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165 (1981) (oppressiveness); *Brooks v. Terteling*, 107 Idaho 262, 688 P.2d 1167 (1984) (surprise and one-sidedness).

■ In the present case, the settlement agreement does not exhibit any of these characteristics when viewed *ex ante*—that is, in light of circumstances when the agreement was made. The buyers and sellers rationally compromised and adjusted their rights under the original real estate contracts. These contracts provided, in the event of default, that the sellers either could demand full payment on the contracts or could retake possession of the property and retain all payments made as liquidated damages. As noted earlier, the sellers elected to sue for full payment on the contracts and they requested a judicial

sale. Court-directed sales are notorious for attracting bids below market prices. Such a sale in this case might well have generated no surplus beyond the outstanding obligation owed the sellers. Consequently, the buyers faced a prospect of losing not only the property but also the entire sum already paid on the contracts.

The settlement agreement provided an opportunity to achieve a better result. Resale in the free market could have generated a surplus beyond the outstanding obligation, enabling the buyers to recover some or all of their "equity" in the property. It was fully understood that if no such resale were consummated, the property would be quitclaimed. Thus, the economic risk the buyers assumed in the settlement agreement was possible loss of any surplus that a judicial sale might generate. The buyers evidently decided that this risk was worth running in pursuit of the potentially greater surplus available in the free market. Of course, we now know, *ex post*, that a free market sale did not occur. But this does not mean the settlement agreement was irrational. It was not oppressive or one-sided; neither did it harbor any surprises. We conclude that the agreement was not substantively unconscionable.

■ The buyers, noting a similarity between quitclaiming the property and forfeiting their interest in it, have argued unconscionability from an additional perspective. They invite attention to *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954), and its progeny. In those cases our Supreme Court has treated forfeiture under real estate contracts as a form of liquidated damage. The Court has held that the liquidated damage represents an unenforceable penalty if it is disproportionate to the seller's actual damage suffered in consequence of the buyer's breach. In such a situation, the buyer may be awarded restitution to eliminate the penalty. Here, the buyers contend that the settlement agreement unconscionably imposes a forfeiture without restitution.

■ In our view, the instant case does not fall within the ambit of *Graves*. The

sellers never sought a forfeiture. As we have seen, they sued on the contracts and requested a judicial sale to satisfy the eventual judgment. The buyers, trying to achieve a better result, explicitly bargained for the alternative remedy that now aggrieves them. The settlement agreement was negotiated after the underlying contracts had been breached, litigation had begun, and the sellers' actual damages were reasonably ascertainable. In that context the parties struck a new bargain, providing for resale of the property in the free market in order to maximize the buyers' recovery of their "equity."

Where, as here, the parties validly have compromised and settled a dispute, their new agreement supersedes all prior claims and defenses. *Wilson v. Bogert*, 81 Idaho 535, 347 P.2d 341 (1959). We hold that the buyers may not claim restitution, but are governed by the remedy contained in the settlement agreement, so long as that agreement is enforceable against them. We now turn to the question of enforcement.

## II

The buyers contend that the sellers have breached the settlement agreement and, therefore, are not entitled to demand specific performance of the quitclaim provision. Specifically, the buyers argue that the sellers failed to cooperate in reselling the properties. The buyers have alleged that the sellers refused to consider any installment sales, refused to allow separate sales of the two parcels, and delayed accepting an offer to purchase both parcels for $150,000 until the offer had been withdrawn. These allegations were set forth in an affidavit filed after the district court ordered the buyers to show cause why they should not be held in contempt for failure to quitclaim their interest. However, the court took no evidence, and made no findings, on any of the allegations before entering the amended judgment.

■ The allegations that the sellers refused to consider installment sales or to

permit separate sales raise a threshold question whether the sellers had any legal duty to do so. The settlement agreement, partially quoted above, obligated the sellers to "accept any offer over $150,000.00 if said sale is a *cash sale* out of the Judgement [sic] amount of $100,924.34" plus interest, costs and fees. The buyers' affidavit contains no averment that the sellers rejected a proposed installment sale that would have included a cash down payment satisfying this language in the agreement. Neither does the affidavit identify any provision of the agreement allowing the two parcels to be sold separately. The parcels, it will be recalled, are the homesite and surrounding acreage of a farm. The agreement refers in the singular to an "offer" over $150,000, to a "sale," and to a new "Buyer." We hold that the sellers did not breach the agreement by refusing to cooperate in a resale of one parcel without the other.

However, we cannot so easily dispose of the allegation that the sellers unduly delayed accepting an offer to purchase both parcels for $150,000 until the offer had been withdrawn. The sellers denied this allegation, framing an issue of disputed fact. The issue is material to the outcome of this case. The settlement of a legal dispute constitutes an executory accord. As noted earlier, such an agreement supersedes all prior claims and defenses. But when one party breaches the agreement, the other party has the option of enforcing the executory accord or of rescinding it. *E.g., L & A Drywall, Inc. v. Whitmore Construction Co.*, 608 P.2d 626 (Utah 1980). In this case, if it were found that the sellers breached their obligation to cooperate in reselling the property, the buyers would be entitled to relief from the settlement agreement. Because the issue turns on controverted facts, it must be resolved by the district court on remand. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982).

Accordingly, the district court's amended judgment is vacated. The case is remanded for further proceedings consistent with this opinion. Although this disposition favors the buyers, we have ruled in the sellers' favor on most of the points discussed. Consequently, no costs or attorney fees are awarded on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.