This is an appeal from a judgment entered upon a directed verdict and a special verdict in favor of the plaintiff, Kenneth Canton, and against defendants, Richard Ford, G. Reynolds Brabner III, and Bay Area Office Supply Equipment, Inc. ("Bay Area") in plaintiff's action for breach of an option agreement and note. Defendants' motion for a new trial or, in the alternative for judgment notwithstanding the verdict, was granted in part so as to reduce the award of attorney fees but denied in all other respects. We reverse and remand.
The pertinent facts of this case are as follows. The defendants entered into a contract with the plaintiff to purchase a building in Mobile. Pursuant to that agreement, the plaintiff executed a deed to the property to Bay Area, which deed was duly recorded on March 4, 1983. In consideration, Bay Area gave plaintiff a promissory note in the amount of $51,000, which was guaranteed by the individual defendants and secured by a mortgage on the property, which was recorded on August *Page 219 
17, 1983. By separate agreement, and for a stated consideration of $100, Bay Area granted plaintiff an option to repurchase the building for $500 at the end of ten years. The option agreement further provided that if, prior to the expiration of ten years, Bay Area defaulted under the terms of the note and mortgage described above, plaintiff would have the right to exercise the option.
Bay Area also obtained a loan from Central Bank of the South ("Central Bank") in the amount of $95,000, with which Bay Area was to make improvements on the building. The loan was secured by a promissory note and mortgage in favor of Central Bank, which was recorded on August 29, 1983, after the plaintiff's mortgage; therefore, Central's mortgage was second in priority.
In late 1984 or early 1985, the defendant Bay Area defaulted, and the notes held by the plaintiff and Central Bank were accelerated. The plaintiff attempted to exercise his option pursuant to its terms, but Bay Area rejected the plaintiff's tender on the ground that the option agreement was unconscionable. At Central Bank's request, plaintiff subordinated his mortgage to that of the bank. Central Bank then instituted foreclosure proceedings and, on June 17, 1985, Central Bank sold the property at the foreclosure sale for $100,198.76. Thereafter, on July 30, 1985, plaintiff brought this action, seeking specific performance of the option agreement or, in the alternative, damages for breach of the option agreement. He also sought to collect on the promissory note of $51,000, which was in default. The defendants answered with general denials and pleaded, among other affirmative defenses, unconscionability of the option agreement. With respect to the promissory note, defendant Ford pleaded release as a result of plaintiff's impairment of the collateral.
The trial court granted plaintiff's motion for directed verdict on all issues except the issue of release of the individual defendants as guarantors of the promissory note due to the alleged impairment of the collateral by the plaintiff. With respect to that issue, the court propounded the following interrogatories to the jury under Rule 49 (b), A.R.Civ.P.:
 "Was the Central Bank of the South to have a first mortgage on the property? Yes or No.
 "If yes, was the Defendant Ford aware of that? Yes or No.
 "If yes, was the Defendant Brabner aware of that? Yes or No."
The jury answered all questions in the affirmative, and the trial court then entered judgment in favor of plaintiff in the amount of $109,382.66 ($100,198.76 plus $9,183.90 in interest) on the breach of the option claim, and $55,420.00 ($46,100.00 plus $9,320.00 in attorney fees) on the breach of the promissory note claim.[1] A motion for JNOV or, in the alternative, new trial filed by Richard Ford and Bay Area was denied, except that the trial court did reduce the amount of attorney fees originally awarded from $21,876.53 to $9,183.90, as reflected above. Ford and Bay Area appeal.
 I.
The appellants contend that the trial court erred in directing a verdict on the promissory note given in consideration of the deed delivered by the plaintiff to the defendants. The note was executed on or about March 4, 1983. It is signed by the plaintiff and the defendants, its terms are clear and unambiguous, and it is in default. The note reflects a face amount of $51,000. Ford contends that the note was given for the purchase price of the building, which he claims he thought was somewhere around $17,000. He further testified that he did not notice that the amount on the note was $51,000 when he signed it. It is upon this basis that appellants argue that the amount of the purchase price was in dispute, and, therefore, that the issue as to the amount plaintiff was entitled to recover under the terms of the note should have been submitted to the jury. *Page 220 
The promissory note in question contains the following pertinent provisions:
 "For value received the undersigned promises to pay to KENNETH W. CANTON, or order, the principal sum of FIFTY-ONE THOUSAND AND NO/100 ($51,000.00). The said principal shall be payable at _____ in monthly installments as follows, namely:
 "One hundred twenty (120) monthly payments, the first sixty (60) of said payments being in the amount of THREE HUNDRED FIFTY AND NO/100 ($350.00) DOLLARS per month with the first of said payments being due on the 15th day of August, 1983 and with the next sixty (60) payments being in the amount of FIVE HUNDRED AND NO/100 ($500.00) DOLLARS per month.
". . .
 "It is further agreed that the undersigned shall pay all costs of collection, including a reasonable attorney's fee if allowed by law on failure to pay any installment of principal and interest of this note on the date due hereof.
". . .
 "Upon failure to pay any installment of principal
and/or interest when due or if any of the conditions and requirements in said mortgage be not complied with, the entire principal sum at the option of the holder, shall become due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent failure."
Promissory notes are subject to the general rule that once an agreement has been reduced to writing, it cannot be varied by parol evidence. Redmond v. Harrelson, 355 So.2d 356 (Ala. 1978). While exceptions to this rule exist, they are not applicable here. In Racquetball of Mobile, Inc. v. Wisser,429 So.2d 1020, 1021 (Ala. 1983), this Court explained:
 "Absent some evidence of fraud in procuring the maker's signature or concealing the contents of the note, a maker cannot contradict the note by a parol agreement made at the time of execution, and evidence which tends to contradict or vary or alter the terms of the note is not admissible. Steiner Bros. v. Slifkin, 237 Ala. 226, 186 So. 156 (1939); Perkins Oil Co. of Delaware v. Davis, 228 Ala. 190, 153 So. 417 (1934)."
Ford does not assert that his signature was procured by fraud, nor is there any evidence that the contents of the note were concealed from any of the defendants. The note in question is completely unambiguous in the provision setting out the principal sum of $51,000 that defendants agreed to pay. Thus, the trial judge was correct in disregarding defendants' allegations contradicting the express terms of the note and in directing a verdict in favor of the plaintiff. Accordingly, insofar as the judgment is based upon the directed verdict for $46,100 ($51,000 less $4,900 paid by the defendant), plus the reasonable attorney fees called for in the note, it is due to be affirmed.
 II.
The appellants also contend that the trial court erroneously rejected the defense of unconscionability of the option agreement. The appellants point to the following excerpt from the record in this case:
 "THE COURT: I have listened to the opening statements and have reviewed the pleadings and the option agreement. Mr. Redditt, and I assume Mr. Bertlotti adopts your position, it sounds like to me your position is simply that your clients made a bad deal. That's not going [to] hold water in this court. You know and I know that there's consideration in an accommodation endorsement. It's not something I'm going to waste this jury's time with. Obviously there was consideration.
 "The only issue that I see which I think gives your client cause for concern is the question of impairment of collateral which I think is an issue and which the jury may be called upon to decide.
 "But I'm not going to sit up here and let you all talk about one side made a bad deal to the other one, it looks like to me, unless you have some law that's going to convince me otherwise. The law is and has been for hundreds and thousands of *Page 221 
years that on accommodation endorsements the consideration need not flow directly to them."
This discussion appears immediately following opening statements, only 12 pages into the trial transcript. It appears that this discussion concerns only the defendant's argument that no consideration was given for the option, not the matter of its alleged unconscionability. An unconscionable contract is one in which there is unequal bargaining power, one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."Hume v. United States, 132 U.S. 406, 411, 10 S.Ct. 134, 136,33 L.Ed. 393 (1889), quoted in Lloyd v. Service Corp. of Ala.,453 So.2d 735, 739 (Ala. 1984). We find no instance where the defendants sought to adduce evidence or advance arguments in support of the defense of unconscionability, nor do we find instances where that defense was expressly or impliedly rejected by the trial court. Consequently, no issue on this point was preserved as error. Accordingly, we have nothing to review.
 III.
The appellants next contend that the trial court erred in allowing plaintiff's counsel to cross-examine defendant Ford about his real estate holdings, thereby improperly placing the wealth of Ford before the jury. On direct examination, Ford testified as follows concerning his inexperience and lack of knowledge in real estate affairs:
"Q. Have you ever bought and sold real estate?
 "A. Have I ever bought and sold? I have never bought any, no, sir.
 "Q. Is the transaction here that we're talking about today the first time that you've ever purchased any real estate?
 "A. Well, I personally have not purchased any, but for the corporation; yes, sir.
 "Q. For the company. It's the first time you've ever been involved in a real estate purchase in any way; is that right?
 "A. Somewhat on a sale of a piece of property years ago; but purchase, yes, sir."
On cross-examination, Ford testified as follows:
 "Q. Now, you knew that was going to be a second mortgage; didn't you?
"A. No, sir.
 "Q. Well, did you think it was suppose[d] to be a first mortgage?
 "A. Sir, not being familiar with real estate dealings, a mortgage to me was a mortgage. Now whether it's first or second, I didn't know."
The portion of the cross-examination that appellants complain of is further set out below:
 "Q. Isn't it a fact, Mr. Ford, you own a lot of interests in real property in Mobile, Baldwin and Choctaw Count[ies]?
"A. I have some interest in it, yes, sir.
 "Q. Isn't it a fact that you own an interest in lot sixteen —
 "MR. REDDITT: Excuse me. This doesn't have anything to do with the issues in the lawsuit.
 "THE COURT: Well, you brought it out on direct, Mr. Redditt, I mean about his inexperience.
 "MR. REDDITT: Well, ownership or inheriting something doesn't have anything to do with experience.
 "THE COURT: I think you've raised the issue. Overruled.
 "Q. Isn't it a fact you own an interest in lot 16 of Dauphin Place here in Mobile County?
 "A. Sir, do you have a street address, cause I'm not familiar with lot 16? I wouldn't know where that is.
 "Q. Okay. Well, isn't it a fact that you own some 18 — or interest in some 1800 acres of land in Choctaw County?
"MR. REDDITT: Judge, may we approach the bench?
 "THE COURT: Mr. Redditt, you have brought it out. I agree with you it might have been inadmissible, I'm not sure. *Page 222 
The question is his familiarity with real estate transactions. I'm going to let it in.
 "We are not going to have a sidebar. Your objection is overruled.
 "MR. REDDITT: Mr. Alexander's questions aren't going to familiarity with transactions. That's the point.
 "THE COURT: Well, I think your ownership of property certainly has something to do with your ability to know and determine what values are and your relative ability to deal with property.
Overruled.
 "A. Isn't it a fact that you own lot 24 of block 5 on Tuttle Addition here in Mobile County?
 "A. Sir, if you give me a street address I can tell you yes or no; but again Tuttle Addition, I don't know where it is.
 "Q. Well, let me ask you this, are you familiar or isn't it a fact that you own an interest in lots 9 of block 3 of the Terrill [phonetic] Subdivision, lot 6 and 7 of block 4 of Wilson Second Addition in Mobile County, lots 12 and 13 of the Blacklawn Subdivision?
 "MR. REDDITT: Excuse me. May I have a standing objection to his questions?
 "THE COURT: You may have a continuing objection. It is overruled.
 "Q. Lot 7, block 26, of the Terrill Subdivision, lot 16 and block 24 of Terrill Subdivision, lot 9, block 14, of the Terrill Subdivision, lot 9, block 5, of Wilson Second Addition, lots 4 and 5 of block 3 of Rapier Drive, the west half — that's all in Mobile County. Isn't it a fact that you also own the west half of the northeast quarter of a section in Baldwin County in section 7, township 7 south, range 2 east?
 "A. Sir, you're giving me legal descriptions which I am not familiar with. I may know them by other names, other locations; but from legal descriptions they could be on the moon as far as I know.
 "Q. Well, you're familiar with 1800 acres up in Choctaw County, aren't you?
"A. Yes, sir.
 "Q. And you know you own interest in that, don't you?
"A. Yes, sir.
 "MR. ALEXANDER: That's all, your Honor." (Emphasis added.)
It appears that the above colloquy took place in an attempt on the part of plaintiff's counsel to rebut Ford's assertions that he had little knowledge or experience in dealing in real estate.
Generally, any references to the wealth or poverty of a party are not permissible. However, either may be relevant and admissible when it goes to a material issue in the case.Johnson v. Harrison, 404 So.2d 337 (Ala. 1981). Notwithstanding the possibility that the ownership of property may imply a financial condition (i.e., wealth), it may also imply a knowledge about the property. As the trial court did, we find the inference to be drawn from that implication to be a reasonable one. Rulings on the admissibility of evidence rest largely within the discretion of the trial court and will not be disturbed on appeal except for an abuse of that discretion.Russellville Flower Craft, Inc. v. Searcy, 452 So.2d 478 (Ala. 1984). We find no abuse of discretion in this ruling.
 IV.
The appellants contend that the trial court incorrectly charged the jury on the issue of impairment of collateral through the use of the special verdict procedure of Rule 49 (b), A.R.Civ.P. They also contend that Rule 49 (b) was used improperly because the court failed to comply with the requirement of Rule 49 (d), which provides:
 "In no event shall the procedures of subdivisions (b) and (c) of this rule be utilized unless the court, within a reasonable time before final arguments are made to the jury, provides to the attorneys for all parties a copy of the written questions or interrogatories, as the case may be, to be submitted to the jury."
The record reveals that notice was given to the parties, albeit oral notice, prior to the final arguments made to the jury. In fact, 17 pages of the trial transcript consist of *Page 223 
discussions between the trial judge and the attorneys for the parties, during which discussions the judge made known his intention to use the special verdict. He discussed the questions to be put before the jury and made modifications to accommodate the concerns of the parties. While on the face of the rule, it appears that the attorneys for the parties are to be provided copies of the written questions or interrogatories to be submitted to the jury, we find no objection by appellants as to either the timeliness or the sufficiency of the notice given by the trial court. Compare Empire-gas, Inc. of Ardmorev. Hardy, 487 So.2d 244 (Ala. 1985), cert. denied,476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 657 (1986).
In construing Rule 49 (d) consistent with Rule 1 (c), which provides that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action," we hold that the notice requirements of Rule 49 (d) can be, and were in fact, waived in this case. Therefore, the court properly proceeded under Rule 49 (b), which provides that "[t]he court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact."
Rule 49 (b) further provides:
 "If . . . the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict." (Emphasis added.)
In discussing the impairment-of-collateral issue, the following occurred:
 "MR. BERTLOTTI: Judge, are you also going to direct a verdict on impairing the collateral?
 "THE COURT: No. I'm going to ask the jury if your client and the other defendant Ford were aware that the bank was to — was the bank to have a first mortgage, if so were your clients aware of it? If they were aware of that then certainly in equity it could have been enforced and there's no impairment of the collateral.
"MR. BERTLOTTI: Okay."
It was not until after the jury was charged and had retired to deliberate that the appellant offered objection to the court's charge to the jury as to the impairment of collateral. Therefore, any objection he had as to the sufficiency of the questions propounded to the jury was waived.
 V.
The appellants contend that the trial court erred in its assessment of damages for the breach of the option agreement. The court directed a verdict in favor of the plaintiff and entered judgment in the amount of $100,198.76, plus statutory interest through the date of the judgment. This amount was based upon the amount that Central Bank sold the property for upon foreclosure. The plaintiff testified that he could redeem the property for that amount. The appellants argue that there is no basis for this measure of damages under Alabama law. We agree.
It is a sound principle of law that "if an owner of land in writing gives another an option on land for a valuable consideration, whether adequate or not, agreeing to sell it to him at a fixed price, if accepted within a specified time, it is binding upon the owner, and upon those who purchase from the owner with a knowledge of such agreement." McMillan, Ltd. v.Warrior Drilling Engineering Co., 512 So.2d 14, 36 (Ala. 1986), quoting Ross v. Parks, 93 Ala. 153 at 155-56, 8 So. 368
at 369 (1890). Additionally the following is applicable:
 "As has heretofore been stated, the holder of an option to buy land has a conditional right to a conveyance, a power to turn that right into an unconditional right to immediate conveyance by performing the conditions, an immunity from revocation by the option giver, and the legal privilege of performing or not performing the conditions at his option. During the agreed term of his option, he has a right that the option giver shall not repudiate or make *Page 224 
performance impossible or more difficult by conveying the land to a third person. These rights are enforceable by all the usual judicial remedies, including judgment for damages, injunction, and decree for specific performance."
(Emphasis added.) 1 A. Corbin, Corbin on Contracts, § 272 at 907 (1950).
The damages for breach of an option to purchase land are determined by the same rule that is applied in an action for breach of a contract for the sale of the land itself. See 92 C.J.S. Vendors Purchasers § 537 (1955): "The same rule as to the measure of damages is applied in the case of an action for a breach by the purchaser of a contract for a right to purchaseland as in the case of a breach of a contract to purchase the land itself." (Emphasis added.) It is also well established that the measure of damages for the breach of a contract for the sale of land is the difference between the contract price and the market value at the date of the breach. Brett v. Wall,530 So.2d 797 (Ala. 1988); Cook v. Brown, 428 So.2d 59
(Ala.Civ.App. 1982), citing Howison v. Oakley, 118 Ala. 215,23 So. 810 (1898). There is no evidence whatsoever in the record establishing the market value of the property at the time of the breach. Thus, the plaintiff failed to properly prove the damages element of his claim for breach of the option to purchase the property, and the trial court erred an fixing the damages based on an improper measure. For this error, the judgment, insofar as it relates to the breach of the option, must be reversed, and the case must be remanded.
Based on the foregoing, the judgment is due to be, and it hereby is, reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.
[1] This is the amount of the judgment as reflected in the trial court's order as last amended.