508 So.2d 1270 (1987)
Donna Lynn CRONACHER, Appellant,
v.
Roy CRONACHER, Jr., Appellee.
No. 86-768.
District Court of Appeal of Florida, Third District.
June 2, 1987.
Rehearing Denied September 14, 1987.
James S. Mattson (Key Largo); Andrew M. Tobin and Sandra L. Zimmerman (Tavernier), for appellant.
Barranco, Kellough & Kircher; Daniels & Hicks and Sam Daniels, Miami, for appellee.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
PER CURIAM.
This appeal stems from an action for dissolution of marriage in which the appellant/respondent Wife sought, inter alia, to have a written settlement agreement set aside on grounds of overreaching and concealment. The trial court denied the Wife's counterclaim to set aside the parties' property settlement agreement and addendum, and granted the Husband's petition for dissolution, incorporating the property settlement agreement and addendum in the final judgment of dissolution.
The Wife appeals the order denying her counterclaim to set aside the settlement agreement and addendum, and also appeals the final judgment of dissolution and the order denying her motion for rehearing. She urges reversal on two grounds. First, she contends that the trial court committed fundamental error in failing to set aside the settlement agreement which she contends was unfair on its face; in failing to order equitable distribution of the marital estate; and in failing to award adequate child support and alimony. Second, the Wife contends that the trial court abused its discretion in limiting her ability to discover the full nature of the Husband's assets in support of her counterclaim to set aside the settlement agreement.
In its order denying the Wife's counterclaim to set aside the settlement agreement and addendum the trial court set out its findings and conclusions as follows:
The parties in this case were married five years prior to their separation. At the point of separation, Donna Cronacher held out some hope that the parties might reconcile. Both parties were undergoing the emotional stress which often accompanies the breakup of a marital *1271 relationship. Roy announced to Donna on January 7, 1984 that he wanted "a separation." On January 18, 1984 he presented Donna with the first draft of an "agreement"  which is cast in alternative language. It clearly holds out the prospect of reconciliation on one hand, while determining property and child custody rights for purposes of a dissolution of marriage on the other. While the various drafts of these agreements were prepared by Roy's lawyer, the parties themselves engaged in the negotiations regarding specific provisions. Roy wanted the signed agreement. He suggested that Donna consult an attorney regarding the draft proposal. He went so far as to give her the names of several attorneys. On January 24 she saw Peter Lenzi, an attorney. Lenzi reviewed the agreement but did not advise Donna whether to sign the agreement.
Donna went to the office of her husband's attorney on January 27, 1984 where she signed the agreement. Witnesses to the signing report that Donna appeared to be in no psychological distress.
After the signing, the wife continued working as a bookkeeper in the business owned by the husband and his family, as she had before.
On May 1, 1984 Donna was served with the petition for dissolution of marriage. She contacted Attorney Richard Nichols and later, Attorney John K. Harris, Jr. of the firm of Shutts & Bowen. Donna met with Harris on May 4, 1984. At that meeting she represented to Harris that Roy Cronacher was "worth 1.5 million." This representation was detailed in Harris' notes of the meeting.
Shortly after being served with process, Donna decided that she would take the parties' daughter and move to Hilton Head, South Carolina. She threatened to leave and, in response, Roy threatened to have her arrested if she did so. In order to resolve the issue, Roy suggested an addendum to their agreement which dealt primarily with the changed circumstance of Donna's move to Hilton Head. On June 13, 1984 [the] parties executed the agreement at Ocean Reef. Witnesses who know the parties reported that Donna did not appear to be in any psychological distress at the time the agreement was signed.
The initial agreement provides for payments to the Wife "for her support and maintenance" in the amount of $3,333.33 per month for a term of five years if a dissolution was to follow, together with child support in the amount of $300.00 per month.
Provisions for alimony to the wife contained in postnuptual separation agreements executed by husband and wife, not tainted by fraud or overreaching and fairly entered into after full disclosure, are valid and binding as to conditions existing at the time the agreement was made. Bailey v. Bailey, 300 So.2d 294 (Fla. [2nd] DCA 1974).
To modify or set aside a property settlement agreement, it is incumbent upon the party seeking to abrogate the agreement to allege and prove fraud, duress, deceit, coercion or overreaching by the other party. Zedeck v. Zedeck, 334 So.2d 87 (Fla. 3rd DCA 1976). Case law suggests two methods, one direct and one indirect. The direct method involves affirmative proof of fraud, misstatements, deceit, etc. The indirect method allows the party seeking to invalidate a property settlement agreement to prove that the agreement is unreasonable on its face. Thereupon, a presumption arises that the opposite party concealed his assets. This, in turn, shifts the burden of proof to the defending party to establish the validity of the agreement. Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962).
Donna Cronacher has proceeded by the direct approach to attack the agreement. She bears the burden of establishing the invalidity of the agreements. She asserts that the following circumstances, acting individually or in concert with each other, compelled her to sign the agreement and addendum under coercion or duress:
1. Donna's emotional strain at the breakup of the marriage;

*1272 2. Roy's "hurry" to conclude, a settlement agreement;
3. Roy's threat to hire legal counsel and pursue his case in court if the agreement were not concluded;
4. Roy's position that his corporate assets were not to be considered in reaching a settlement agreement;
5. Roy's "failure to disclose" the extent of assets to Donna;
6. Roy's threat to have Donna arrested if she left Florida with their child without first signing the addendum.
The facts and law do not support Donna's contention that she signed the agreement and addendum under duress.
First, the fact that she was under emotional strain is insufficient to demonstrate coercion because almost all settlements in domestic relations matters are entered during periods of distress. Bare v. Bare, 120 So.2d 186 (Fla. [3d] DCA 1960). Both parties here were under emotional strain at the time the agreements were signed.
Second, the fact that Roy was "in a hurry" did not manifest itself in duress against his wife. The agreement was drafted and redrafted over a two-week period. Most of the revisions were at Donna's request. Two redrafts were done at her request after her meeting with Attorney Lenzi.
Third, the fact that Roy threatened to vigorously pursue his position in court fails to constitute duress. Every person contemplating a settlement is aware that, in the event the case is not settled, heated litigation may result. The fact that one party may threaten to exercise his rights in court does not vitiate an otherwise voluntary settlement.
Fourth, the fact that Roy may have stated that his corporate assets were "out of bounds" is not coercive. The statement merely clarifies the husband's bargaining position. He stated clearly his intention that the corporate assets would not be reflected in the settlement agreement  and indeed the agreement reflects no transfer of corporate assets to the wife.
Fifth, the wife's contention that the husband failed to disclose the extent of his assets to Donna is simply untrue. At trial Donna claimed that Roy represented his worth to be $500,000. Yet, during her May 2, 1984 conference with Attorney Harris she stated that her husband was worth "1.5 million." The net worth statement (Wife's Exhibit 5) shows Roy's net worth at about 1.3 million dollars. Another factor is important in considering the evidence on this point. Donna has worked in the Cronacher family business as bookkeeper on a part time basis during the course of the marriage and is familiar with the extent of her husband's business ventures. She executed joint tax returns with her husband. She was well aware of his financial position.
Sixth, the threat to have Donna arrested arose in the context of Donna's threat to leave Florida with the parties' child. The addendum was signed as a means of resolving the conflict which arose as a result of the mutual threats made by the parties. The situation was not, as characterized by the wife, a "sign-or-go-to-jail" proposition.
Finally, the wife is a well-educated individual who has experience as a stockbroker and is sophisticated in financial affairs. There is nothing about the agreement or addendum which she does not comprehend. Neither agreement is complex. And while she may have signed the initial agreement in the hope that the parties might reconcile, hope for reconciliation was all but gone when she signed the addendum reaffirming the prior agreement.
There is nothing about the agreements themselves which indicate that the husband has unfairly taken advantage of the wife. The periodic payment of $200,000. to the wife of this relatively short term marriage is within the bounds of justice and reason. The wife might have done better by litigating rather than settling, but she has failed to meet her burden of proof in support of vacating the settlement agreement and addendum. The agreements must stand.
*1273 The court subsequently entered a final judgment of dissolution which ratified, approved and incorporated the parties' settlement agreement and addendum, with the exception of a provision pertaining to the child's education. An order was also entered denying the Wife's motion for rehearing. This appeal by the Wife followed.
Upon consideration of the issues on appeal in the light of the record, briefs and arguments of counsel, we have concluded that no reversible error has been demonstrated. Therefore, the final judgment and orders under review are affirmed.
Affirmed.