LaROSE, Judge.
Appellants, a group of approximately 100 retired Tampa police and firefighters (the Retirees), appeal the trial court’s final order dismissing their lawsuit for lack of subject matter jurisdiction. We have jurisdiction, see Fla. R.App. P. 9.030(b)(1)(A), and reverse and remand for further proceedings.
Proeedurally, this case finds itself before us after the trial court granted, without elaboration, a motion to dismiss the Retirees’ third amended complaint. The City of Tampa; the Board of Trustees for the City Pension Fund for Firefighters and Police Officers in the City of Tampa (the Pension Board); the International Association of Firefighters, Local 754 (IAFF); and West Central Florida Police Benevolent Association (PBA) (collectively, the Unions) filed the motion, claiming, in part, that the trial court lacked subject matter jurisdiction because the Retirees had not exhausted administrative remedies before the Public Employee Relations Commission (PERC). Upon the Retirees’ motion for rehearing, the trial court elaborated its rationale. In a nutshell, the trial court agreed that the Retirees had not exhausted administrative remedies and could not invoke the trial court’s subject matter jurisdiction. As will be seen, this ruling shut the doors to any forum in which the Retirees could pursue their claims.
We review de novo the trial court’s subject matter jurisdiction. See Metro-Dade Invs. Co. v. Granada Lakes Villas Condo., Inc., 74 So.3d 593, 594 (Fla. 2d DCA 2011); Sanchez v. Fernandez, 915 So.2d 192, 192 (Fla. 4th DCA 2005).
The case has its genesis in 2001, when a group of about 160 Tampa police and firefighter employees agreed to retire under a Deferred Retirement Option Program (DROP). Pursuant to the terms of a collective bargaining agreement negotiated in 2001 between the City and the Unions, these DROP participants, subject to legislative approval, were to receive a 3.5% multiplier to calculate their monthly retirement benefit. The then-effective multiplier was only 2.5%.[1] Because the pension fund was a creature of the legislature, the 3.5% multiplier would be effective only if approved by special act of the legislature. See Bailey v. City of Tampa, 175 So.2d 533, 534 (Fla.1965) (Ervin, J., dissenting from discharge of certiorari review) (explaining that the legislature, in 1941, created Tampa’s Pension Fund for Firemen and Policemen); Fla. League of Cities, Inc. v. Dep’t of Ins. & Treasurer, 540 So.2d 850, 853 (Fla. 1st DCA 1989) (defining local law plans, such as Tampa’s, as plans created by special act of the legislature or by municipal ordinance); see also §§ 175.021, et seq, 185.01, et seq., Fla. Stat. (2000). Absent such legislation, the multiplier would remain 2.5%.
Although our record is silent as to the City’s efforts to secure the necessary legislation, the legislature adopted no special act, apparently because of funding concerns. Consequently, the 3.5% multiplier never took effect.
The City and the Unions negotiated a new collective bargaining agreement in late 2003. This agreement called for a multiplier of 3.15%. In 2004, the legislature passed a special act approving this multiplier for police and firefighters employed on or after October 1, 2003. Because the Retirees had left City employment prior to October 1, 2003, they were ineligible for this multiplier and the concomitant higher *750 pension benefit. They felt cheated and abandoned by their unions; their expectations were dashed.
Several Retirees filed unfair labor practice complaints against the Unions with PERC. See Ambraz v. W. Cent. Fla. Police Benevolent Ass’n, 30 F.P.E.R. ¶ 186 (2004); see also Ambraz v. Int’l Ass’n of Fire Fighters, Tampa Fire Fighters # 751, 30 F.P.E.R. ¶ 131 (2004); Amero v. Int’l Ass’n of Fire Fighters, Tampa Fire Fighters # 751, 30 F.P.E.R. ¶ 187 (2004). PERC dismissed the administrative action, adopting its General Counsel’s view that the Retirees lacked standing and that the Unions owed no duty of fair representation to retired public employees.
The General Counsel found that the Charging Parties lack standing to bring the instant unfair labor practices charges against the PBA, their former bargaining agent, because they were not public employees as defined by Chapter 447, Part II, Florida Statutes, when the alleged unfair labor practice occurred. The Charging Parties acknowledge that the General Counsel correctly interpreted Florida law on the issue of their standing to file the instant unfair labor practice charges. However, they cite to Baker v. Board of Education, Hoosick Falls, 192 [194] Misc.2d 116[,] 750 N.Y.S.2d 486 (2002), aff'd sub. nom. (N.Y.App.Div.3d Dep’t, Jan. 15, 2004), and urge the Commission to extend Florida law in this area “to conform to the decisions of the New York courts under its public sector collective bargaining law after which Florida’s collective bargaining law was patterned.”
[[Image here]]
We decline to adopt [the] proximate injury inquiry for determining whether a retired employee has standing to file an unfair labor practice charge against his or her former union. As the General Counsel correctly stated, the issue of standing in this context in Florida concerns whether or not the employee was a public employee as defined by Chapter 447, Part II, Florida Statutes, when the alleged unfair labor practice occurred. In the instant case, the Charging Parties may have been public employees at the time they were assured that they would receive the benefits of the enhanced pension multiplier, but they were not public employees when the alleged unfair labor practice occurred. Therefore, the General Counsel correctly concluded that the Charging Parties lack standing to bring these unfair labor practices charges against their former bargaining agent. Accordingly, we agree with the General Counsel that this allegation should be dismissed.
Next, the General Counsel found that even assuming the Charging Parties have standing to file the unfair labor practice charges, the amended charges do not establish that the PBA breached its duty of fair representation....
[[Image here]]
... [W]e agree with the General Counsel that the Charging Parties have made no prima faci[e] showing that the PBA’s decision not to negotiate the enhanced pension multiplier for the retired employees was discriminatory or made in bad faith. The amended charges demonstrate that the PBA’s decision was rationally based upon an increased cost in the current employees’ pension contributions. Thus, the amended charges do not demonstrate that the PBA acted arbitrarily, that it has discriminated against this group of former employees for reasons such as lack of union membership, or that it has not exercised the broad discretion accorded it by the courts and Commission in good faith.
*751 Ambraz, 30 F.P.E.R. ¶ 186; see also Amero, 30 F.P.E.R. ¶ 187. PERC’s order constituted final agency action. See § 120.68, Fla. Stat. (2000); Morfit v. Univ. of S. Fla., 794 So.2d 655, 656 (Fla. 2d DCA 2001). Apparently concluding that the odds of success on appeal were slim, these Retirees did not appeal. Instead, they and others turned to the trial court.
By 2011, the Retirees’ third amended complaint asserted claims for declaratory, contract, and tort relief. The gist of the operative complaint is that “but for” the promise of an increased pension multiplier the Retirees would not have retired. The trial court dismissed the complaint for lack of subject matter jurisdiction. As is evident, the Retirees are in a void where, seemingly, they can air their claims in no fora.
We know, of course, that those Retirees who took part in the earlier PERC cases, exhausted their administrative remedies. That not all participated is of no moment here. We must conclude that the outcome of any administrative proceeding as to them would have been no different. The law requires no futile act. See Waksman Enters. Inc. v. Oregon Props., Inc., 862 So.2d 35, 43 (Fla. 2d DCA 2003) (“[T]he law does not require that a party to a contract take action that would clearly be futile”); see also Pub. Emps. Relations Comm’n v. Dist. Sch. Bd. of De Soto Cnty., 374 So.2d 1005, 1012 (Fla. 2d DCA 1979) (stating that where a case does not involve review of PERC action, the doctrine of exhaustion of remedies does not apply); Dist. Bd. of Trs. of Broward Cmty. Coll. v. Caldwell, 959 So.2d 767, 770 (Fla. 4th DCA 2007) (noting that one exception to the rule requiring the exhaustion of administrative remedies is where it can be demonstrated that no adequate administrative remedy remains available under chapter 120).
We are mindful that the City, the Pension Board, and the Unions have advanced numerous theories as to why the Retirees cannot state causes of action or otherwise proceed. The trial court addressed no such theories. It relied on the lack of subject matter jurisdiction alone. We do not opine on the merits of the claims or defenses. The battle at this point must be joined before the trial court. See Farneth v. State, 945 So.2d 614, 617 (Fla. 2d DCA 2006) (“A fundamental principle of appellate procedure is that an appellate court is not empowered to make findings of fact.”); Douglass v. Buford, 9 So.3d 636, 637 (Fla. 1st DCA 2009).
Accordingly, we reverse and remand for further proceedings.
DAVIS, J., Concurs.
KHOUZAM, J., Concurs specially.

. The multiplier is a value, expressed as a percentage, used in combination with an employee's years of service and salary to determine the percentage of income a retiree is paid as a pension benefit.