DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AMS STAFF LEASING, INC.,**
Appellant,

v.

**ROBERT F. TAYLOR** and **DIAMOND K RESOURCES, LLC,** a foreign
limited liability company,
Appellees.

No. 4D14-1387

[January 7, 2015]

Appeal of non-final order from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Dwight L. Geiger, Judge; L.T. Case No. 562013CA001916 (DC).

Amy L. Baker and Henry W. Jewett II of Rissman, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for appellant.

No appearance for appellees.

TAYLOR, J.

AMS Staff Leasing, Inc., appeals a non-final order denying its motion to abate the action and compel arbitration. Because we find that the agreement to arbitrate was valid, we reverse.

On December 18, 2012, the plaintiff, Robert Taylor, started working as a truck driver for Diamond K Resources, LLC. The plaintiff was hired by a supervisor at Diamond K after providing his driver's license and social security card. The plaintiff testified that he did not fill out any paperwork that day.

When the plaintiff arrived at a Florida job site on the morning of December 21, 2012, a supervisor gave him a written application for employment with AMS, an employee leasing company based in Dallas, Texas. The supervisor told the plaintiff and the other drivers to fill out the form, backdate it to December 19, 2012, and return it within five minutes or else they could "go home" and would be fired. The plaintiff filled out the paperwork on the hood of a truck under a parking lot light. The plaintiff

signed the agreement, but he did not read it because he did not have his reading glasses with him.

The agreement contains an arbitration clause that requires any dispute with AMS to be arbitrated in Texas:

> I agree that my sole recourse for resolving any dispute with AMS arising under my employment, including but not limited to wage claims, shall be to arbitrate such dispute. Such arbitration shall be pursuant to the arbitration laws of the State of Texas and the rules, then obtaining, of the American Arbitration Association. Venue of any action shall be in Dallas County, Texas. AMS is based in Dallas, Texas, and Applicant acknowledges that this Agreement is to be partially performed in Dallas, Texas.

In January 2013, the plaintiff was injured in the course and scope of his employment. The plaintiff's employment was terminated shortly thereafter.

The plaintiff then sued AMS and Diamond K for wrongful termination, claiming that the reason he was terminated was because he made a valid claim for workers' compensation.

AMS made a special limited appearance in the action and filed a Motion to Abate and Compel Arbitration. The court held a hearing on the motion and allowed the plaintiff to give testimony concerning the circumstances surrounding the execution of the arbitration agreement.

Counsel for the plaintiff argued that: (1) AMS waived enforcement of the agreement by not seeking arbitration in the workers' compensation case; (2) the arbitration agreement violated public policy because it failed to exempt workers' compensation matters and because it required a Florida hourly-wage worker to travel to Texas to arbitrate a claim that his termination violated the workers' compensation law, and (3) the arbitration agreement was unconscionable and was procured under duress.

The trial court ultimately entered an order denying AMS's motion to compel arbitration. The trial court made factual findings consistent with the plaintiff's testimony. Further, the trial court ruled that the arbitration provision was invalid because: (1) it did not exclude workers' compensation proceedings from its scope, and (2) it violated public policy by requiring an hourly wage employee to arbitrate an employment dispute in a state other than Florida. This appeal followed.

"The standard of review for denial of a motion to compel arbitration is de novo." *Shetty v. Palm Beach Radiation Oncology Assocs.-Sunderam K. Shetty, M.D., P.A.*, 915 So. 2d 1233, 1234 (Fla. 4th DCA 2005).

"Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). It is for the court, not the arbitrator, to determine whether a valid written agreement to arbitrate exists. *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 471 (Fla. 2011). Likewise, "it is incumbent on the court, not the arbitrator, to determine whether an arbitration agreement violates public policy." *Id.*

"[A]n agreement to arbitrate future disputes in another jurisdiction is outside the authority of the Florida Arbitration Code . . . and . . . renders the agreement to arbitrate voidable at the instance of either party." *Damora v. Stresscon Int'l, Inc.*, 324 So. 2d 80, 82 (Fla. 1975). If, however, the Federal Arbitration Act ("FAA") applies to the agreement, a Florida court must enforce a valid arbitration clause which provides for arbitration in a foreign state. *Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3d DCA 2008).

The FAA applies to "a transaction that, in fact, involves interstate commerce," even if the parties did not intend the transaction to have an interstate commerce connection. *Mintz & Fraade, P.C. v. Beta Drywall Acquisition, LLC*, 59 So. 3d 1173, 1175 (Fla. 4th DCA 2011) (quoting *Default Proof*, 992 So. 2d at 445). The phrase "interstate commerce" is to be interpreted broadly. *Id.*

Here, the employment transaction involved interstate commerce. Although the plaintiff worked in Florida, he entered into an employment agreement with a Texas employee leasing company. In light of the broad interpretation of "interstate commerce" under the case law, the employment agreement in this case involves interstate commerce and is thus governed by the FAA.

The reasons the trial court gave for finding the arbitration agreement invalid are not legally sound. First, it does not violate public policy for an agreement to require arbitration of a workers' compensation retaliation claim, as arbitration of such a claim does not defeat the remedial purpose of the statute. *See Audio Visual Innovations, Inc. v. Spiessbach*, 119 So.

3d 522, 525 (Fla. 2d DCA 2013). A claim for workers' compensation benefits is distinct from a cause of action for retaliatory discharge under section 440.205, Florida Statutes (2012).

The arbitration agreement is valid as applied to the retaliation claim in this case. To be sure, the arbitration provision in this case did not specifically exclude claims for workers' compensation benefits from its scope, whereas the arbitration provision in *Audio Visual* did expressly exclude workers' compensation claims. But the absence of such an exclusion in this case does not render the arbitration provision invalid. Here, AMS never sought to compel arbitration of the plaintiff's claim for workers' compensation benefits. The only claim that AMS sought to arbitrate is the plaintiff's claim in the underlying lawsuit for retaliatory discharge in violation of section 440.205, Florida Statutes. Arbitration of such a claim is not inconsistent with public policy.

The trial court's second reason for invalidating the arbitration agreement also fails to withstand careful scrutiny. Here, the agreement is governed by the FAA, not Florida's arbitration code. Thus, because the FAA governs the agreement, the fact that the agreement provides for arbitration in another state is not a ground for invalidating it. *See, e.g.*, *Default Proof*, 992 So. 2d at 444.

Further, AMS has not waived its right to arbitrate the plaintiff's claim for retaliatory discharge. Although the trial court did not rely on waiver as a ground for denying the motion to compel arbitration, the plaintiff did argue below that AMS waived the right to arbitrate the claim. "Waiver of the right to arbitration results from active participation in a lawsuit or from taking action inconsistent with that right." *O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So. 2d 181, 185 n.4 (Fla. 2006). The determination of whether there has been a waiver does not necessarily depend on the timing of the motion to compel arbitration, but rather on the prior taking of an inconsistent position by the moving party. *Miller & Solomon Gen. Contractors, Inc. v. Brennan's Glass Co., Inc.*, 824 So. 2d 288, 290 (Fla. 4th DCA 2002).

Here, AMS has not taken any action that is inconsistent with its right to arbitrate the plaintiff's retaliatory discharge claim. The first action that AMS took in the lawsuit was filing its motion to compel arbitration. AMS has not actively participated in this lawsuit or otherwise taken any action inconsistent with the right to arbitrate. Furthermore, the fact that AMS did not attempt to arbitrate the plaintiff's claim for workers' compensation benefits—a separate claim which AMS might not have been legally entitled

4

to arbitrate in the first place—did not somehow operate as a waiver of its right to arbitrate the retaliation claim in this case.

Finally, the plaintiff did not establish any defenses to arbitration, such as duress or unconscionability. The party seeking to avoid arbitration bears the burden of proving a contractual defense to enforcement of the arbitration agreement. *See Spring Lake NC, LLC v. Beloff*, 110 So. 3d 52, 54-55 (Fla. 2d DCA 2013).

One possible defense to arbitration is duress. "[D]uress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *Francavilla v. Francavilla*, 969 So. 2d 522, 524–25 (Fla. 4th DCA 2007) (citations and internal quotation marks omitted). To establish duress, two factors must be proven: (1) that the act was effected involuntarily and was not an exercise of free choice or will, and (2) that this condition of mind was caused by some improper and coercive conduct by the other side. *Id.* at 525. "Duress involves a dual concept of external pressure and internal surrender or loss of volition in response to outside compulsion." *Id.* (citation and internal quotation marks omitted). Moreover, as a general rule, a contract "may not be set aside on the basis of duress or coercion unless the improper influence emanated from one of the contracting parties—the actions of a third party will not suffice." *Vitakis-Valchine v. Valchine*, 793 So. 2d 1094, 1096 (Fla. 4th DCA 2001).

Even without considering AMS's argument that any alleged coercion came from a third party,[1] we find that there was insufficient evidence to establish duress. The only evidence of a "threat" in this case was the threat that the plaintiff's services were not needed if he did not sign the employment contract. This is insufficient to constitute duress. *See* Restatement (Second) of Contracts § 176 cmt. a (1981) ("An ordinary offer to make a contract commonly involves an implied threat by one party, the offeror, not to make the contract unless his terms are accepted by the other party, the offeree. Such threats are an accepted part of the bargaining process."). Moreover, the plaintiff never testified that the allegedly coercive conduct induced his assent to the employment agreement; nor did he testify that but for the allegedly coercive conduct,

---

[1] For purposes of our analysis, we will simply assume for the sake of argument that the Diamond K supervisor was acting as an agent on behalf of AMS when the supervisor had the plaintiff sign the AMS employment agreement, and that the supervisor's conduct should be imputed to AMS.

he would have demanded removal of the arbitration provision or otherwise would have avoided signing the agreement.

Another possible contract defense is unconscionability. To support a finding of unconscionability sufficient to invalidate an arbitration clause, the party opposing arbitration must establish both procedural and substantive unconscionability. *Premier Real Estate Holdings, LLC v. Butch*, 24 So. 3d 708, 711 (Fla. 4th DCA 2009). "Procedural unconscionability relates to the manner in which the contract was made and involves issues such as the parties' relative bargaining power and their ability to know and understand disputed contract terms." *FL-Carrollwood Care, LLC v. Gordon*, 72 So. 3d 162, 165 (Fla. 2d DCA 2011). Substantive unconscionability, by contrast, "considers whether the contract terms themselves are so outrageously unfair as to shock the judicial conscience." *Id.* Procedural and substantive unconscionability are assessed independently. *Id.*

We turn our attention first to substantive unconscionability. The plaintiff presented no evidence that the arbitration agreement was substantively unconscionable. A substantively unconscionable agreement is one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Hume v. United States*, 132 U.S. 406, 411 (1889). An example of a substantively unconscionable agreement is one that deprives a claimant of an effective way to vindicate a statutory cause of action in the arbitral forum. *See Romano ex rel. Romano v. Manor Care, Inc.*, 861 So. 2d 59, 61-64 (Fla. 4th DCA 2003) (finding that arbitration agreement was substantively unconscionable because it did not provide adequate mechanisms for vindication of patient's statutory rights under Nursing Home Resident's Rights Act).

Here, the arbitration agreement was not so outrageously unfair as to shock the judicial conscience. The agreement did not deprive the plaintiff of any statutory cause of action. As discussed above, arbitration of a retaliatory discharge claim does not defeat the remedial purpose of section 440.205, Florida Statutes. Thus, we conclude that the arbitration agreement was not substantively unconscionable. Because the arbitration provision was not substantively unconscionable, the plaintiff's unconscionability defense fails irrespective of whether the provision was procedurally unconscionable.

Based on the foregoing, we reverse and remand with instructions for the trial court to grant the motion to compel arbitration.

*Reversed and Remanded.*

GROSS and GERBER, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**