DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

OPTUMRX,

Appellant,

v.

KING'S DRUGS, INC.; VISTACARE PHARMACY
SERVICES, LLC; HEPZIBAH, INC.; HEALTH LINK
PHARMACY, LLC; HEALTHWISE PHARMACY, LLC;
and ADEL CONSULTING, INC.,

Appellees.

No. 2D2023-0096
_____

April 17, 2024

Appeal from the Circuit Court for Hillsborough County; Rex M. Barbas,
Judge.

Kristen M. Fiore of Akerman LLP, Tallahassee; Michael J. Holecek of
Gibson, Dunn & Crutcher LLP, Los Angeles, California; Alexandra M.
Mora and Ndifreka U. Uwem of Akerman, LLP, Miami, for Appellant.

Richard E. Miller of Jacobs Law Group, PC, Philadelphia, Pennsylvania;
Sean Estes of Hoyer Law Group, PLLC, Tampa; and Mark R. Rosen,
admitted pro hac vice, of Jacobs Law Group, PC, West Conshohocken,
Pennsylvania, for Appellees.

LUCAS, Judge.

A dispute between a pharmacy benefits manager and several
pharmacies requires us to delve into the scope and effect of an
arbitration agreement. In the case before us, OptumRx argues that the
circuit court erred when it concluded it could not compel King's Drugs,

Inc., Vistacare Pharmacy Services LLC, Hepzibah Inc., Health Link Pharmacy, LLC, Healthwise Pharmacy Inc., and Adel Consulting, Inc. (collectively, the Pharmacies), to arbitrate their dispute with OptumRx in California.  We reverse.

I.

OptumRx alleges that it entered into a Provider Agreement with the Pharmacies in which OptumRx, in essence, acts as a "middleman" on behalf of various insurance companies to negotiate and administer pharmaceutical claims for reimbursement.  The agreement is lengthy and quite technical, but in this appeal, we focus on two provisions: first, the agreement states that if a "Dispute" (as broadly defined) arises and cannot be resolved through an informal meeting or conference, the Dispute "shall thereafter be submitted to binding arbitration before a panel of three arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association"; and second, the agreement explicitly incorporates a separate document, OptumRx's Provider Manual.[1]  Although the language within the Provider Manual has been amended over the years, the operative version we are concerned with, the 2022 Provider Manual, provides as follows:

> [T]he parties will work in good faith as set forth below to resolve any and all issues, disputes, or controversies between them (hereinafter referred to as a "Dispute") including, but not limited to all questions of arbitrability or the formation, validity, scope, and interpretation of this arbitration agreement, all disputes relating in any way to the parties' relationship, the [Provider] Agreement, or the [Provider Manual] or the breach of either agreement, and all disputes

---

[1] The Provider Agreement provides that this document may be referred to as the Administrator Provider Manual, the Provider Manual, or the Pharmacy Manual.  For the sake of clarity, we refer to this document as the Provider Manual.

relating in any way to Network Pharmacy Provider's status as a participating Network Pharmacy Provider in the Administrator's network, shall be resolved exclusively by binding arbitration administered by the American Arbitration Association . . . .

. . . .

Any arbitration proceeding under this Agreement shall be conducted in Los Angeles County or Orange County, California. . . .

. . . .

The parties acknowledge that this arbitration agreement is part of a transaction involving interstate commerce and that the Federal Arbitration Act governs both substantive and procedural aspects of this arbitration . . . .

The Provider Manual further states that any party asserting a dispute "shall provide written notice to the other party identifying the nature and scope of the Dispute" and that, if the parties are then unable to resolve the dispute, any party may certify in writing the dispute wasn't resolved and commence an arbitration.

On December 16, 2021, an attorney for the Pharmacies delivered a written "Notification of Dispute" to OptumRx that described several issues of disagreement about OptumRx's reimbursement and administration of the Pharmacies' prior claims.[2] In the letter, the Pharmacies also claimed that OptumRx was in breach of the Provider Manual. The parties' attorneys participated in a phone conference in an

---

[2] The letter was sent on behalf of a list of hundreds of pharmacies nationwide, a list that included the Pharmacies in this action. We are informed that litigation similar to the case before us is pending in numerous courts throughout the country. As of the time of writing this opinion, there are no less than two pending appeals in Florida concerning OptumRx and the arbitration issues raised in this case. *See Vistacare Pharm. Servs. 2 LLC, d/b/a Vistacare Pharm. II v. OptumRx*, 2D23-466; *OptumRx v. Bay Pharm. Inc.*, 5D23-652.

attempt to resolve the disputes identified in the letter but were unable to reach any agreement. During this conversation, OptumRx's counsel stated that these disputes were subject to arbitration; the Pharmacies' counsel disagreed.

On March 29, 2022, OptumRx filed petitions to compel the Pharmacies to arbitrate the disputes identified in the Pharmacies' written notification. The petitions were later consolidated, and the Pharmacies raised various defenses to OptumRx's requested arbitration. After hearing arguments on OptumRx's motion to compel arbitration, the circuit court entered an order denying OptumRx's motion and dismissing its petitions.

In its order, the circuit court concluded that 9 U.S.C. § 4 (2018) of the Federal Arbitration Act (FAA) only authorized federal district courts, not state courts, to compel arbitration. The court further found (apparently in the alternative) that if venue is specified in an arbitration agreement (as it is in the Provider Manual), then section 4 of the FAA requires a petition to compel arbitration to be filed in that venue. The court was further persuaded that the December 2021 letter did not clearly articulate a specific dispute as to the six Pharmacies named in the petitions before it, such that there was no "party aggrieved" as required under section 4 of the FAA. Finally, the court stated it was "well-settled" that the Florida Arbitration Code, §§ 682.01-.25, Fla. Stat. (2022), could not provide an independent basis to compel arbitration because under *Damora v. Stresscon International, Inc.*, 324 So. 2d 80, 82 (Fla. 1975), a Florida circuit court could not order arbitration in another state. In dismissing the petitions, the court did not address any of the substantive claims or defenses—including whether the case was

4

arbitrable—but rested its decision on the determination that it was without jurisdiction or lawful authority to compel arbitration.

OptumRx timely appeals the circuit court's order. We have jurisdiction. *See* Fla. R. App. P. 9.130(a)(3)(C)(iv).

## II.

The legal issues presented in this appeal are somewhat intertwined but generally concern issues surrounding the subject matter jurisdiction of a circuit court, statutory interpretation of an arbitration act, and whether arbitration may be compelled under a contractual provision. In all respects, these are issues we review de novo. *See generally Venn Therapeutics, LLC v. CAC Pharma Invs., LLC*, 49 Fla. L. Weekly D509, D510 (Fla. 2d DCA Mar. 6, 2024) ("The standard of review we use when examining a trial court's construction of an arbitration agreement as well as its application of the law to the facts is de novo." (citing *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 366 (Fla. 2d DCA 2022))); *Bell Transp., LLC v. Dep't of Highway Safety & Motor Vehicles*, 351 So. 3d 249, 250 (Fla. 2d DCA 2022) ("We review issues of statutory interpretation de novo." (citing *Lab. Corp. of Am. v. Davis*, 339 So. 3d 318, 323 (Fla. 2022))); *Friedel v. Edwards*, 327 So. 3d 1242, 1244 (Fla. 2d DCA 2021) ("We review a circuit court's determination of subject matter jurisdiction de novo." (citing *Artz rel. Artz v. City of Tampa*, 102 So. 3d 747, 749 (Fla. 2d DCA 2012))).

Furthermore, when an arbitration agreement is governed by the FAA, "[f]ederal substantive law controls arbitration issues" in state court proceedings. *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 703 (Fla. 2022) (citing *Preston v. Ferrer*, 552 U.S. 346, 349 (2008)).

## III.

The circuit court erred when it determined it was without jurisdiction to compel arbitration under section 4 of the FAA.  In pertinent part, 9 U.S.C. § 4 provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.  Five days' notice in writing of such application shall be served upon the party in default.

Section 4 of the FAA authorizes federal district courts to consider and compel arbitration in civil cases; but it does not preclude state courts from exercising their own jurisdictional power to compel arbitration when construing a contract governed by the FAA.  *See English v. McCrary*, 348 So. 2d 293, 297 (Fla. 1977) ("The circuit courts of the State of Florida are courts of general jurisdiction . . . clothed with most generous powers under the Constitution. . . .  [N]othing is outside the jurisdiction of a superior court of general jurisdiction except that which is clearly vested in other courts or tribunals, or is clearly out side of and beyond the jurisdiction vested in such circuit courts by the Constitution and the statutes enacted pursuant thereto." (quoting *State ex rel. B.F. Goodrich Co. v. Trammell*, 192 So. 175, 177 (Fla. 1939))).  There is a "presumption that state courts enjoy concurrent jurisdiction" to apply federal statutes such as the FAA.  *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981).  As the Supreme Court has observed, the FAA "creates a body of federal substantive law" that is "applicable in state and federal court."  *See Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1,

25 n.32 (1983)); *see also McKenzie Check Advance of Fla., LLC v. Betts*, 112 So. 3d 1176, 1185 (Fla. 2013) ("[T]he Supreme Court has held that the FAA applies in both federal and state courts." (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272 (1995))); *Sasche Constr. & Dev. Corp. v. Affirmed Drywall, Corp.*, 251 So. 3d 1005, 1009 (Fla. 2d DCA 2018) ("The FAA applies in both federal and state courts." (citing *Betts*, 112 So. 3d at 1185; *Global Travel Mkt., Inc. v. Shea*, 908 So. 2d 392, 396 (Fla. 2005))). And indeed, the FAA has been applied and interpreted, repeatedly, in Florida state courts. *See, e.g., Airbnb*, 336 So. 3d at 703; *Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc.*, 154 So. 3d 1115, 1125 (Fla. 2014); *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1154-55 (Fla. 2014); *Fla. Holdings III, LLC v. Duerst ex rel. Duerst*, 198 So. 3d 834, 843 (Fla. 2d DCA 2016); *Palm Court, NH, L.L.C. v. Dowe*, 336 So. 3d 735, 738 (Fla. 4th DCA 2022); *CEFCO v. Odom*, 278 So. 3d 347, 351-54 (Fla. 1st DCA 2019); *Fahnestock v. Dean Witter Reynolds, Inc.*, 691 So. 2d 509, 510 (Fla. 4th DCA 1997).

The California venue provision within the Provider Agreement did not divest the circuit court of its lawful power to consider OptumRx's petitions. The court's reliance on the Florida Supreme Court's pronouncement in *Damora*, 324 So. 2d at 82 ("[A]n agreement to arbitrate future disputes in another jurisdiction is outside the authority of the Florida Arbitration Code . . . and . . . renders the agreement to arbitrate voidable at the instance of either party."), was misplaced for two reasons. First, as previously mentioned, the arbitration provision at issue here is governed by the FAA. *See AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 685-86 (Fla. 4th DCA 2015) ("If, however, the Federal Arbitration Act ('FAA') applies to the agreement, a Florida court must enforce a valid arbitration clause which provides for arbitration in a

foreign state." (citing *Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3d DCA 2008))). Second, even under the Florida Arbitration Code, that part of the *Damora* opinion is no longer apt because section 682.02, the section *Damora* was construing, was substantially amended in 2013. The statute's prior text—"this act shall not apply to any such [arbitration] agreement or provision to arbitrate in which it is stipulated that this law shall not apply or to any arbitration or award thereunder"—was removed. *See* ch. 2013-232, § 7, Laws of Fla. (July 1, 2013). We agree with OptumRx that this amendment effectively cabined that portion of *Damora*'s holding to the prior version of the statute. *Cf. Rogers & Ford Constr. Corp. v. Carlandia Corp.*, 626 So. 2d 1350, 1354 (Fla. 1993) ("The [l]egislature responded to these decisions by amending the statute in 1974 to enlarge the standing of condominium associations while reserving all the unit owners' statutory and common law rights that were available, including standing. Ch. 74–104, § 7, Laws of Fla. The amendment effectively abrogated *Rubenstein* [*v. Burleigh House, Inc.*, 305 So.2d 311 (Fla. 3d DCA 1974)], *Commodore Plaza* [*at Century 21 Condominium Ass'n, Inc. v. Saul J. Morgan Enters., Inc.*, 301 So.2d 783 (Fla. 3d DCA 1974)], and *Hendler* [*v. Rogers House Condominium, Inc.*, 234 So.2d 128 (Fla. 4th DCA 1970)] . . . ."). The circuit court erred in concluding otherwise.

Finally, we can reject out of hand the court's determination that OptumRx was not a "party aggrieved" under section 4 of the FAA. A party may compel arbitration under section 4 where, as here, there is a written agreement to arbitrate, a dispute within the scope of that agreement, and a refusal to arbitrate. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). An opposing party's refusal to proceed to arbitration may be manifested in various ways. As

the Eleventh Circuit Court of Appeals explained concerning this issue, the trial court's focus should be

> on "the specific controversy—the concrete dispute that one party has 'fail[ed], neglect[ed], or refus[ed]' to arbitrate—and determine whether *that* controversy would give rise to a suit under federal law." [*Vaden v. Discover Bank*, 556 U.S. 49, 77-8 (2009)] (Roberts, C.J., concurring in part and dissenting in part) (quoting 9 U.S.C. § 4). After all, FAA § 4 is only triggered when one party has expressed a "refusal" to arbitrate, and the other party has been thereby "aggrieved." *See* 9 U.S.C. § 4. This refusal will undoubtedly be documented in some way (for example, by a letter). Examining these pre-litigation or extra-legal communications between the parties can provide insight into the factual nature of the dispute. In addition, the FAA petitioner's description of the underlying dispute in the § 4 petition itself can provide some (although not conclusive) evidence of the contours of the dispute. . . . As Chief Justice Roberts explained, "the exercise is closely analogous to the jurisdictional analysis in a typical declaratory judgment action," which requires a court to imagine for itself which coercive claims the parties' dispute could hypothetically support, in order to determine whether a hypothetical coercive lawsuit brought by the declaratory judgment defendant would present a federal question on the face of its well-pleaded complaint. [*Vaden*, 556 U.S. at 78] (citing *Franchise Tax Bd.* [*of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,*] 463 U.S. [1,] 19 [(2009)]).

*Cmty. State Bank v. Strong*, 651 F.3d 1241, 1256 (11th Cir. 2011) (first, second, and third alterations in original) (footnote omitted).

The Pharmacies, through their counsel, initiated a "Dispute" under the arbitration provision in the Provider Agreement when they sent their written Notification of Dispute to OptumRx's attorney. Their letter sufficiently described various points of controversy that could potentially be arbitrable. Though they question the sufficiency of the record, they never contradict OptumRx's representation that the Pharmacies later indicated their refusal to arbitrate the issues described *in their own letter*

during a telephone conference with OptumRx's counsel.  *Cf. ACE Am. Ins. Co. v. Guerriero*, No. 2:17-CV-00820, 2017 WL 3641905, at *6 (D. N.J. Aug. 24, 2017) (recognizing that a refusal to arbitrate under the FAA can arise during a telephone conference).  They have steadfastly continued their refusal to arbitrate by litigating this issue in the circuit court below and in this court on appeal.  From our de novo review, the Pharmacies' refusal to arbitrate the disputes they notified OptumRx of satisfied section 4's requirement that there be a "failure, neglect, or refusal" to arbitrate;[3] OptumRx is an aggrieved party under section 4.

Accordingly, there was no impediment to the circuit court exercising its jurisdiction to decide OptumRx's petitions to compel arbitration on their merits.  We reverse and remand for the court to do so in accordance with this opinion.

Reversed and remanded.

NORTHCUTT and CASANUEVA, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

_____

[3] We note there appears to be something of an open question in federal jurisprudence as to whether a party's refusal must be "unequivocal" in order to satisfy section 4 of the FAA.  *Cf. Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06–715 SC, 2011 WL 6014438, at *2 n.4 (N.D. Cal. Dec. 2, 2011) ("Because the Ninth Circuit has not adopted the 'unequivocal refusal' standard, and because Plaintiff makes compelling arguments that such a standard imported from the [National Labor Relations Act] should not apply to the FAA, the Court declines to adopt the *PaineWebber* [*Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir. 1995),] standard and instead adheres to the text of Section 4 itself, which states that a court may compel arbitration upon a party's 'failure, neglect, or refusal to arbitrate.' ").  We need not resolve that question today because it appears to us that the Pharmacies' continued refusal to arbitrate the disputes they raised was sufficiently unequivocal to meet that heightened threshold.